**Willie JORDAN, Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

**No. 61025.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 25, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Oct. 15, 1992.

Frank A. Anzalone, Clayton, for movant-appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Movant appeals from the denial, without an evidentiary hearing, of his Rule 24.035 motion. We affirm.

On March 30, 1988, the State filed a complaint against movant charging him with First Degree Burglary, a Class B felony, § 569.160 RSMo 1986, and stealing over $150.00, a Class C felony, § 570.030 RSMo 1986. On April 2, 1988, movant was indicted by a St. Louis County Grand Jury and charged with the aforementioned offenses. On November 30, 1989, an Information in lieu of Indictment was filed charging movant as a prior and persistent offender. On March 13, 1990 an Amended Information was filed charging movant as a Class X offender, § 558.019 RSMo 1986. On September 21, 1990, claimant, then an inmate with the Missouri Department of Correc-

tions, filed an "Inmate's Request for Disposition of Indictments, Informations or Complaints" with the St. Louis County Circuit Court requesting final disposition of charges then pending against him.[1]

On January 7, 1991, movant was produced in St. Louis County Circuit Court from the Missouri Department of Corrections pursuant to a Writ of Habeas Corpus ad Prosequendum. He was then returned to the site of his incarceration, the Farmington Correctional Center. On January 22, 1991, movant was again produced in court where he appeared with his attorney and pled guilty to the burglary and stealing charges. The trial court, after finding that the guilty pleas were knowingly and voluntarily made, sentenced movant as a Class X offender to two concurrent terms of twelve years, to run concurrently with the term he was then serving. The court found no probable cause to believe there was ineffectiveness of counsel.

In his Rule 24.035 motion, as amended by counsel, movant alleged, *inter alia*, that the trial court was without jurisdiction, pursuant to the Interstate Agreement on Detainers (IAD), § 217.490, Art. III(4) RSMo 1986, to accept movant's guilty plea in that movant had been transferred from the correctional facility in which he had been incarcerated to the site of the hearing and back without final disposition of his case. Movant also filed a motion requesting a full evidentiary hearing. The motion court denied both motions and entered extensive findings of fact and conclusions of law.

■ On appeal, our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 24.035(j); *Robinson v. State* 772 S.W.2d 770, 771 (Mo. App.1989).

■ Movant contends that the "motion court erred in denying [his] motion to dismiss [for lack of jurisdiction] pursuant to §§ 217.450 et. seq. and 217.490 RSMo...." Movant's argument is essentially that the motion court should have read the Uniform

Mandatory Disposition of Detainers Law (UMDDL) §§ 217.450–85 RSMo 1989 Supp. to include that provision of the IAD which provides that "[if] trial is not had on any indictment, information or complaint ... prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing same with prejudice." § 217.490, Art. III(4).

The motion court, in its conclusions of law, stated:

5. With regard to the allegation that the court had lost jurisdiction movant has no right to relief. Section 217.490 RSMo is the enactment in this state of the Interstate Agreement on Detainers. That statute establishes a procedure for disposition of charges pending in other states when a person is confined under sentence in a given state. That procedure includes providing for the transfer of prisoners from one sovereign state to another. In contrast, the Uniform Mandatory Disposition of Detainers Law is enacted in Sections 217.450 through 217.-485. That law provides the method for disposition of pending charges when a person is confined in the same state. Thus, all parties are under the jurisdiction of that state's courts, and no other sovereigns are involved. No provision of the Uniform Mandatory Disposition of Detainer Law requires that all charges be concluded before a return to the place of confinement, unlike the Interstate Agreement.

This conclusion is correct. The IAD applies to criminal charges pending in one state against a prisoner serving a term of imprisonment in another state. *State v. White*, 728 S.W.2d 564, 566 (Mo.App.1987). The UMDDL, on the other hand, applies to persons confined in a state correctional institution against whom charges are pending in this state. *Id.* "[T]he provisions of the [IAD] are triggered only when a 'detainer' is filed with the custodial (sending)

---

1. Movant identified the following charges as then pending: Tampering 1st; Burg. 1st; Stealing (Persistend [sic] offender); Violation of Mo.

Drug Law–Possession; Excessive Speed; Driving while lice. [sic] removed; Display [sic] plate of another[.]

State by another State (receiving) having untried charges pending against the prisoner." *Hicks v. State,* 719 S.W.2d 86, 90 (Mo.App.1986), *quoting United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1838, 56 L.Ed.2d 329 (1978).

 Movant was incarcerated in a Missouri correctional facility and the charges pending against him were also in this state. The UMDDL has no provision requiring dismissal of complaints, informations and indictments not finally determined before a prisoner has been returned to his original place of imprisonment and we decline movant's invitation to imply one. In construing a statute we must give effect to the intent of the legislature; we may not add provisions to a statute under the guise of construction if such provisions are not plainly written or necessarily implied. *Wilkinson v. Brune,* 682 S.W.2d 107, 111 (Mo.App. 1984). We must presume the legislature was aware of the state of the law at the time of the statute's enactment. *Nicolai v. City of St. Louis,* 762 S.W.2d 423, 426 (Mo. banc 1988). The provisions of the UMDDL were last amended in 1989, the IAD was last enacted in 1982. Had the legislature wanted to require that a prisoner in movant's situation not be returned to the original place of incarceration until final disposition of the case, it could have so provided. The provision is not necessarily implied.[2] Point denied.

Judgment affirmed.

AHRENS, P.J., and CRIST., J., concur.

---

**2.** We further note that movant's position was rejected by implication in *State ex. rel. Stanley v. Davis,* 569 S.W.2d 202 (Mo.App.1988). In *Davis,* we held that the IAD was not applicable to situations in which federal prisoners confined in state are transferred to state court for the limited purpose of arraignment, appearances or hearings and are then returned to the federal facility. *Id.* at 210. Implicit in this reasoning is that the IAD is not applicable to state prisoners incarcerated in state correctional facilities.