**STATE of Missouri, Respondent,**

v.

**Samuel MAYWEATHER, Appellant.**

**Samuel MAYWEATHER, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58840, 61664.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 2, 1993.

S. Paige Canfield, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant, Samuel Mayweather, appeals his jury conviction for illegal distribution of a controlled substance near a school, unlawful use of a weapon, and illegal possession of a controlled substance. Defendant also appeals the subsequent denial of his Rule 29.15 motion after an evidentiary hearing. We affirm in part and reverse in part.

Viewed in the light most favorable to the verdict, the evidence adduced at trial was as follows: On November 7, 1989, Detectives Rodney Brunson, Gertrude Bogan, and Thomas Murphy of the St. Louis City Police Department were working as part of the Street Corner Apprehension Team (SCAT). SCAT is an undercover operation used to investigate complaints of narcotics activity in the city. SCAT officers work in three teams: (1) undercover, (2) surveillance, and (3) arrest. On this evening, Brunson was working undercover trying to purchase crack cocaine. He was wearing a Kel transmitter, a body mike which transmits his conversations to a nearby surveillance unit. Bogan was working the surveillance unit, monitoring Brunson's activity by sight and by listening to the Kel transmitter. Murphy was working on the arrest team, out of sight of Brunson and Bogan, but receiving information from Bogan and waiting for the word to enter the scene and arrest suspects.

On the evening in question, Brunson met up with Orlando Larkins who agreed to help him purchase crack cocaine. Larkins took Brunson to 1336 Semple Avenue where Brunson parked his car. Brunson testified Larkins went to the door of 1336 Semple and met a man wearing a red jacket and black jeans, later identified as Anthony Smith. After Larkins and Smith briefly conversed on the porch, the Defendant, wearing a multicolored blue jacket and blue jeans, came out of the house. All three men moved onto the sidewalk directly in front of the house. At this point, Brunson observed Defendant hand Smith a plastic wrapper. An argument between the three men ensued. Brunson exited his car and joined them. Smith poured the contents of the plastic bag into his hand, displaying several off-white rocklike substances. Larkins picked one of the substances. He and Brunson then went to the car, where Larkins gave Brunson one of the substances. Brunson gave the prearranged signal for arrest over the Kel transmitter. Surveillance officer Bogan gave descriptions of the three men to the arrest team and they moved in for the arrest. When Murphy approached Defendant to arrest him, he observed Defendant remove a blue steel revolver from the front of his pants and pitch it to his right. Murphy arrested Defendant and then retrieved the revolver. A search of Defendant at the police station revealed a bag containing crack cocaine and $506 in cash. Defendant was charged with three counts: Count I—illegal distribution of cocaine base near a school, Count II—unlawful use of a weapon, and Count III—illegal possession of a controlled substance.

A jury convicted Defendant on all three counts. Defendant was sentenced to ten years on Count I, five years on Count II, and five years on Count III, with sentences to run concurrently. Defendant filed a timely Rule 29.15 motion. An evidentiary hearing was held on Defendant's motion and said motion was denied. His direct appeal and Rule 29.15 appeal were consolidated.

Defendant raises three points on appeal: (1) the trial court should have sustained his motion to suppress because seizure of the crack cocaine and $506 was tainted by his unlawful arrest without probable cause; (2) the trial court erred in overruling his motion pursuant to *Batson v. Kentucky*, [476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] because the trial court based its decision on the fact it could not make a finding of race of the venirepersons in question; and (3) the trial court erred in denying his Rule 29.15 motion because his attorney was ineffective in failing to call Defendant's mother to testify.

## I. MOTION TO SUPPRESS

Defendant argues his arrest was without probable cause and thereby violated his right against unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 10, 18(a) of the Missouri Constitution. He further asserts the trial court failed to make a ruling on the motion to suppress.

■ Upon review of the denial of a motion to suppress, the facts and their reasonable inferences are to be stated in the light most favorable to the state. *State v. Blair*, 691 S.W.2d 259, 260[1] (Mo. banc 1985). We are free to disregard any contrary evidence and must affirm the trial court's decision if the evidence is sufficient to sustain its finding. *Id.* at 260[2].

■ To meet constitutional requirements, Detective Murphy could arrest Defendant without a warrant only if he had probable cause. *State v. Mills*, 735 S.W.2d 197, 200[1] (Mo.App.1987); *State v. Stokes*, 710 S.W.2d 424, 426[1–3] (Mo.App.1986). Probable cause exists where the arresting officer knows " 'facts sufficient for a prudent person to believe [the] defendant had committed or was committing an offense.' " *State v. Tate*, 658 S.W.2d 940, 945[4] (Mo.App.1983), *quoting State v. Berry*, 609 S.W.2d 948, 952[6–11] (Mo. banc 1980). The existence of probable cause is determined by the particular facts of the individual case. *Stokes*, 710 S.W.2d at 426[1–3]; *Tate*, 658 S.W.2d at 945[5]. Furthermore, probable cause is determined by the collective knowledge and the facts available to all of the officers participating in the arrest. *State v. Adams*, 791 S.W.2d 873, 877[7] (Mo.App.1990); *State v. Young*, 701 S.W.2d 490, 494[1] (Mo.App.1985). The arresting officer does not need to possess all of the available information. *Young*, 701 S.W.2d at 494[1].

■ Defendant asserts the trial court should have sustained his motion to suppress because evidence adduced at trial fails to show his description was transmitted to the arrest team and therefore, the arresting officers lacked probable cause to believe he was committing a crime. Defendant specifically points to the conflicting testimony of undercover officer Brunson. Brunson testified at the hearing on the motion to suppress that he conveyed a description of Defendant as wearing a multi-colored jacket and blue jeans on the Kel transmitter. However, at trial, the recording of the Kel transmitter did not reflect Defendant's description. Brunson then testified at trial he did *not* transmit Defendant's description, because he was unsure of Defendant's involvement in the transaction until he was on the sidewalk with Defendant and unable to relay a description.

Even with the conflicting testimony of Brunson, we must examine the entire record to determine the sufficiency of the evidence. The collective knowledge of Brunson and Bogan indicate there was probable cause to believe Defendant was committing a crime. This knowledge was imputed to arresting officer Murphy when he received a description of Defendant prior to arrest. *Haywood v. United States*, 584 A.2d 552, 557[6–9] (D.C.App.1990); *Cf. United States v. Valez*, 796 F.2d 24, 28[4] (2nd Cir.1986) (failure to communicate all details of suspect's description did not render a mistaken arrest unrea-

sonable); and *Illinois v. Fox,* 155 Ill.App.3d 256, 108 Ill.Dec. 314, 508 N.E.2d 475, 480[4] (Ill.App.2d Dist.1987) (probable cause determined by collective information of officers even if such suspect's description not transmitted to arresting officer). The surveillance officer, Bogan, testified she maintained visual and audio contact with Brunson. She further testified that she relayed a description of all three suspects, including Defendant, to the arrest team even though she did not receive Defendant's description from the Kel transmitter. Arresting officer Murphy testified he received descriptions of all three suspects prior to being ordered in for the arrest. While the testimony of the officers is confusing at best, there is sufficient evidence to support the trial court's denial of Defendant's motion to suppress. Furthermore, the trial court clearly made a ruling on the motion to suppress. Point denied.

## II.  PEREMPTORY CHALLENGES

▇▇▇ Defendant argues in his second point that the trial court erred in overruling his *Batson* objection. The court overruled his objection because Defendant failed to prove the race of the venirepersons in question. We disagree. Our review of the denial of such a motion is limited to whether the trial court was clearly erroneous. *State v. Parker,* 836 S.W.2d 930, 939[14] (Mo. banc 1992).

At trial, Defendant raised a timely *Batson* objection contesting the State's reasons for striking four black venirepersons. At that time, the following conversation transpired:

THE COURT: I'm not going to make any finding about the race of a person. I think that's their personal choice as to what race they are and I'm not going to make any finding on that.

DEFENSE: Well, as I understand it, if you don't make a finding then we can't go ahead with the motion.

THE COURT: Well, you have to prove it. There's no proof that this man is black or this man is white or this man is oriental. There is no proof of that, Mr. Fried. I can't make that kind of finding. I think you have to offer some proof.

DEFENSE: Well, I would submit that Mr. Mayweather considers himself black. I would further submit on the indictment and on the complaint he is listed as black.

\*     \*     \*     \*     \*     \*

DEFENSE: Then on the basis of that, I would submit that the State has made it's (sic) preemptory (sic) strikes and four of those six strikes involved the striking of persons I would believe by their appearance to be black and, therefore, to me raises a concern that there may be a problem in light of the holding in *Batson vs. Kentucky* that there are certain people who are being struck simply because of their apparent racial composition.

At this time, the prosecutor listed four persons: Doris Crenshaw, Paul Conner, Robert Tolen, and Elton Hooper. She specifically referred to the four as "black," and gave her race-neutral reasons for striking said venirepersons. After defense counsel attempted to rebut the prosecutor's reasons, the trial court overruled the *Batson* objection because there had been no proof of the race of the venirepersons in question. However, the trial court erred in so holding, because there is no requirement that Defendant prove the race of a venireperson. Defendant raised a *Batson* claim by pointing to "one or more specific venirepersons struck by the state and identify[ing] the cognizable racial group to which the venireperson or persons belong." *Parker,* 836 S.W.2d at 939[12]. Defendant properly challenged the peremptory strikes of four venirepersons and identified the cognizable racial group to which they belonged, stating they appeared to be black. While the jury information sheet does not reflect the race of the venirepersons, there was apparently no question about whether the four stricken venirepersons were black. Both the defense attorney and the prosecutor referred to the four venirepersons as "black." The trial court, in its later denial of Defendant's Rule 29.15 motion, had no trouble referring to a "venirepanel of 19 blacks and 23 whites" and a jury of "8 blacks and 4 whites."

Once Defendant had properly raised his *Batson* claim, a unitary procedure has been dictated whereby the trial court must con-

duct an evidentiary hearing to determine whether the prosecutor's peremptory strikes were racially motivated. *Id.* at 940[15]. The trial court's denial of Defendant's *Batson* challenge determining whether the prosecutor's strikes were racially motivated was clearly in conflict with the mandate of *Parker*. Therefore, we are required to reverse and remand.

### III. 29.15 APPEAL

Defendant also alleges the motion court clearly erred in denying his Rule 29.15 motion because he was denied effective assistance of counsel. Defendant argues trial counsel was ineffective for failing to call Defendant's mother, Durrance Mayweather, to testify she gave him the money found on him to purchase money orders.

■■■■ Our review of the motion court's denial of Defendant's 29.15 motion is limited to a finding of whether its decision was clearly erroneous. Rule 29.15(j). The motion court's decision is clearly erroneous when "a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made." *Bevly v. State,* 778 S.W.2d 297, 298[1] (Mo.App.1989). Further, Defendant must prove by a preponderance of the evidence that he is entitled to relief. Rule 29.15(h).

■■■■ In order for Defendant to prove ineffective assistance of counsel, he must first show that his attorney failed to use " 'the skill and diligence that a reasonably competent attorney would exercise under similar circumstances.' " *Sanders v. State,* 738 S.W.2d 856, 858 (Mo. banc 1987), *quoting Thomas v. Lockhart,* 738 F.2d 304, 307 (8th Cir.1984). Defendant must then show he was prejudiced by his counsel's ineffectiveness. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); and *Sanders,* 738 S.W.2d at 858. There is a strong presumption that counsel's conduct falls within the range of reasonable assistance of counsel. *State v. Twenter,* 818 S.W.2d 628, 635[9] (Mo. banc 1991); *Sanders,* 738 S.W.2d at 858.

■■■■ We cannot say the motion court was clearly erroneous in denying Defendant's Rule 29.15 motion. Defendant's mother testified at the hearing on the motion that she would have testified at trial that she gave Defendant $430 to $440 to obtain money orders for her. Defendant's attorney thoroughly interviewed her. Defense counsel testified he did not call her to testify because he believed it would raise a question in the minds of the jury that she was lying to help her son. Strategic choices and selection of witnesses after thorough investigation rarely provide a basis for ineffective assistance of counsel. *Twenter,* 818 S.W.2d at 635[10]; *Sanders,* 738 S.W.2d at 858; and *Childress v. State,* 778 S.W.2d 3, 6[11] (Mo.App.1989). Point denied.

We reverse and remand to the trial court for it to determine the *Batson* issue under *State v. Parker,* 836 S.W.2d at 939[12]. The judgment and sentences are in all other respects affirmed.

AHRENS, P.J., and REINHARD, J., concur.