STATE of Missouri, Respondent,

v.

Glen Edward BRINGLESON, Appellant.

Glen Edward BRINGLESON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18704, 19547.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 30, 1995.

Rose M. Wibbenmeyer, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Glen Edward Bringleson, was charged with four felonies: robbery in the first degree, § 569.020,[1] and armed criminal action, § 571.015, which allegedly occurred simultaneously on August 22, 1992, and attempting to commit robbery in the first degree, § 564.011, and armed criminal action, § 571.015, which allegedly occurred simultaneously on September 24, 1992. A jury acquitted Appellant of the first two charges and convicted him of the latter two, assessing sentences of twelve and eight years' imprisonment, respectively. The trial court entered judgment per the verdicts, running the sentences consecutively. Appellant brings appeal 18704 from that judgment.

While that appeal was pending, Appellant filed a motion to vacate the judgment and sentences per Rule 29.15, Missouri Rules of Criminal Procedure (1993). The motion court denied relief. Appellant brings appeal 19547 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 18704

Appellant claims the trial court erred in (1) receiving evidence obtained from Appellant following an allegedly unlawful arrest, and (2) refusing to declare a mistrial after a witness testified Appellant was wanted on "warrants from Canada."

Because Appellant does not challenge the sufficiency of the evidence to support his conviction of the crimes of September 24, 1992, we need not set forth all of the evidence pertinent to them. However, certain evidence regarding those crimes, together with certain evidence regarding the crimes of which Appellant was acquitted, is relevant to Appellant's claim that he was unlawfully arrested.

About 4:45 a.m., August 22, 1992, Kelly Breneman was working as cashier at a Vickers convenience store in Springfield, Greene County, Missouri. A man entered, jumped across the counter, brandished a knife, and demanded money. Breneman opened the cash register and gave the assailant the money. The assailant tied Breneman's hands behind her back with "plastic straps." The assailant then led Breneman to a "walk-in cooler," placed her inside, and tied her feet with more plastic straps. After the assailant departed, Breneman freed herself and phoned the Springfield Police Department ("SPD").

About 5:15 a.m., September 24, 1992, Stella Fanning, manager of the Vickers store referred to in the preceding paragraph, was reading a pump in front of the store. A man approached on foot from a car across the street. He entered the store, followed by Fanning. As she walked past him, he put a knife to her throat and said, "[D]on't do anything stupid, give me all your money."

Fanning struggled with the assailant. During the tussle, he dropped the knife. As the scuffle continued, the assailant said the robbery "wasn't going like planned, it didn't go like it did last time." The assailant eventually regained possession of the knife and fled. Fanning notified the SPD. Officers arrived quickly.

Herbert Weaver, who resides near the Vickers store, went to his front door about 5:05 a.m., that date (September 24) to see whether his newspaper was outside. He saw no car in the street. Some ten minutes later, he looked again. This time, he saw a "strange automobile" parked in the street.

---

1. References to statutes are to RSMo 1986.

He went outside and wrote down the license number, noting the vehicle was a Plymouth.

A few minutes later, Weaver saw a man run past his front door and enter the Plymouth. The man drove away "with no lights on." Soon thereafter, the area was "saturated with police." Weaver gave an officer the license number and a description of the Plymouth.

Officer Dave Bowden of the SPD investigates robberies and assaults. He obtained a description of the Plymouth and its license number from Weaver. The license number led Bowden to the residence of Rene Martin in Springfield. Bowden arrived at Martin's residence later in the day, September 24. He received no answer at the door.

Bowden returned a short time later and saw Appellant outside the residence. Bowden spoke to Appellant, who told Bowden he could "cancel the theft report on the license plates," as they belonged to Martin and were inside the house.

Bowden departed, but returned a third time. On this occasion, about 5:00 p.m., the Plymouth "pulled into the driveway." The license plates were on the Plymouth. Appellant was driving it; Martin was a passenger. Bowden contacted officer Rick Wells for assistance.

Bowden and Wells confronted Appellant and Martin in the driveway, near the Plymouth. Bowden told Martin he wanted to ask about her license plates. While Bowden talked to Martin, Appellant entered the house through the back door.

Wells moved "around to the front of the house" and saw Appellant run out the front door "less than a minute" after entering.

Bowden obtained permission from Martin to search the Plymouth. On its floor, Bowden found a bag containing numerous plastic "flex ties," which can be used "as a handcuff." In the trunk, Bowden found a jacket. One of its pockets contained three more flex ties.

Later that day (September 24), Bowden issued a "wanted item" for Appellant's arrest, listing his name and description. It was broadcast by radio and placed on the "meeting board" for SPD officers.

 Appellant was arrested the following day. Evidence regarding the arrest was presented at a pretrial hearing on Appellant's motion to suppress physical evidence obtained from him and statements made by him following the arrest. In recounting the evidence about the arrest, we state the facts and reasonable inferences arising therefrom favorably to the trial court's ruling, disregarding contrary evidence and inferences. *State v. Franklin*, 841 S.W.2d 639, 641[1] (Mo. banc 1992). We are to affirm the trial court's ruling if the evidence is sufficient to sustain its findings. *Id.*

Jerry Jones is both an Ash Grove police officer and Greene County deputy sheriff. On September 25, 1992, Jones knew the SPD was attempting to capture Appellant, who was considered armed and dangerous. Jones had information that Appellant had been at a residence in Ash Grove, but had departed.

That same day, Kenneth Collins, who was Chief of Police of Walnut Grove and also a Greene County deputy sheriff, heard a radio dispatch that officers were looking for Appellant and were requesting assistance from officers in plain clothes and plain vehicles because Appellant had been "fleeing from police officers."

Collins joined Jones in Ash Grove. They received information that Appellant had been seen near Highway 160 in Dade County. Collins and Jones called the Dade County sheriff and reported the information. Collins testified:

> "They suggested that we begin from the east side of the county in Ash Grove and begin to go west. They would send a [sic] officer from the west side coming our direction to see if we could see him."

Collins and Jones, in civilian clothing and using Jones' unmarked vehicle, drove west from Ash Grove. They found Appellant three or four miles north of Everton on

Highway 160 in Dade County. They notified the Dade County sheriff's office by radio, then exited their vehicle, seized Appellant, handcuffed him and awaited the arrival of Sheriff Wayne Spain of Dade County. At the suppression hearing, Collins and Jones avowed they did not arrest Appellant because Dade County is outside their jurisdiction.

Sheriff Spain arrived "a couple of minutes" after Collins and Jones seized Appellant. Spain placed Appellant under arrest and read him the "Miranda warnings." Spain then "released custody" of Appellant to Collins and Jones for delivery to Greene County.

The trip to the Greene County sheriff's office in Springfield took 30 to 35 minutes. En route, Appellant asked Collins and Jones why they picked him up. Jones responded, "I really don't know why . . . you tell me, why does Springfield want you." Appellant replied he had done an armed robbery "awhile back" and had "tried another one the night before last and it didn't work."

At the Greene County sheriff's office, Collins and Jones turned Appellant over to Bowden, who took Appellant to SPD headquarters. There, Bowden seized Appellant's clothing and shoes.

At trial, Vickers manager Fanning identified Appellant as the man who attempted to rob her. Shown the shoes taken from Appellant by Bowden, Fanning testified they were similar to the shoes worn by Appellant during that incident.

Jones testified at trial, recounting the statement Appellant made during the journey from Dade County to Springfield.

As we understand Appellant's brief, the evidence he contends the trial court should have suppressed is: (a) his statement to Collins and Jones, and (b) his shoes. Appellant characterizes that evidence as "fruits of the illegal arrest." Appellant asserts the arrest "was made without a warrant, without lawful authority, and without probable cause by two plain clothes officers in an unmarked car who were acting outside the scope of their jurisdiction."

At the conclusion of the suppression hearing, the trial court found Collins and Jones arrested Appellant by detaining him until the sheriff of Dade County arrived. The State does not concede that finding is right, but cites no authority demonstrating it is wrong. For the purpose of adjudicating Appellant's first point, we shall assume—without deciding—that there is sufficient evidence to support the finding.

The trial court further found that when Collins and Jones entered Dade County and arrested Appellant, they were acting under the direction of the sheriff of Dade County. The trial court noted, "[T]here's a statute which gives them authority . . . to do everything that a Dade County Sheriff could do, which includes detain [Appellant] and arrest him."

■ The trial court was evidently referring to § 57.111, which reads:

"Whenever any . . . deputy sheriff of any county in this state is expressly requested, in each instance, by a sheriff of an adjoining county of this state to render assistance, such . . . deputy shall have the same powers of arrest in such county as he has in his own jurisdiction."

We take judicial notice that Greene County adjoins Dade County. *Cf., State v. Haun,* 324 S.W.2d 679, 682[4] (Mo.1959); *State v. Dennis,* 537 S.W.2d 652, 654[5] (Mo.App. 1976).

■ We hold the evidence, viewed favorably to the trial court's findings, is sufficient to support the finding that Collins and Jones were in Dade County at the request of the sheriff of Dade County to assist in capturing Appellant. The sheriff of Dade County was sending an officer east toward Greene County to search for Appellant. Officers in civilian clothing and unmarked vehicles were needed because Appellant had fled from uniformed officers. Collins, Jones and their vehicle fulfilled that need. The plan was for Collins and Jones to go west into Dade County toward the eastbound Dade County officer.

The finding discussed in the preceding paragraph brought Collins and Jones under § 57.111. Consequently, when they seized Appellant they had the same power of arrest as they had in Greene County.

Appellant cites *State, on Inf. of McKittrick v. Williams*, 346 Mo. 1003, 144 S.W.2d 98, 104 (banc 1940), for the proposition that a sheriff's authority "is generally only county-wide." We need not discuss that case because it was decided 39 years before § 57.111 was enacted. Laws of Missouri 1979, H.C.S.S.B. No. 259, pp. 249–50, § 1.

Appellant also cites *State v. Fritz*, 490 S.W.2d 30, 32 (Mo.1973), *cert. denied*, 411 U.S. 985, 93 S.Ct. 2282, 36 L.Ed.2d 962 (1973), in support of his contention that inasmuch as Collins and Jones were outside Greene County, their actions should be viewed as those of a private citizen. *Fritz* does not aid Appellant for two reasons. It was decided in 1973 and involved a Federal Treasury Agent, not a deputy sheriff.

Section 544.216 reads, in pertinent part:

"Any sheriff or deputy sheriff ... may arrest on view, and without a warrant, any person ... who he has reasonable grounds to believe has violated any law of this state.... The power of arrest authorized by this section is in addition to all other powers conferred upon law enforcement officers, and shall not be construed so as to limit or restrict any other power of a law enforcement officer."

■ Whether Appellant's arrest was lawful thus hinges on whether Collins and Jones had reasonable grounds to believe Appellant had violated a Missouri law. That issue is determined upon the collective knowledge and facts available to all agencies and officers participating in the arrest. *State v. Mayweather*, 865 S.W.2d 672, 675[4] (Mo.App.E.D.1993); *State v. Morris*, 662 S.W.2d 884, 892–93[17, 18] (Mo.App.S.D. 1983). The arresting officer need not possess all of the available information. *Mayweather*, 865 S.W.2d at 675[4]; *Morris*, 662 S.W.2d at 892–93[18].

Information gathered by Bowden and other officers of the SPD prior to Appellant's arrest included the report from Vickers manager Fanning about the attempted robbery September 24, 1992, the license number and brand of the automobile driven without lights by a man fleeing the scene of that incident, Appellant's statement later that day that the license plates belonged to Martin and were inside the house, the operation of the vehicle (bearing those plates) by Appellant later the same day, and Appellant's flight when Bowden told Martin he wanted to ask about the plates.

■ The determination of whether probable cause exists at the time of arrest is made upon practical considerations of everyday life on which reasonable persons act, not the hindsight of legal technicians. *State v. Heitman*, 589 S.W.2d 249, 253[5] (Mo. banc 1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980). Applying that standard, we hold the information set forth in the preceding paragraph was sufficient for a reasonable person to believe Appellant committed the felony of attempted robbery in the first degree at the Vickers store September 24, 1992. Compare: *State v. Trimble*, 654 S.W.2d 245, 258 (Mo.App.S.D.1983). Discovery of the plastic flex ties by Bowden on the Plymouth floor and in the jacket in the Plymouth's trunk may have been sufficient for probable cause to arrest Appellant for the robbery at the same store August 22, 1994; however, we need not decide that.

Appellant asserts, "[A]lthough arguably Detective Bowden of the [SPD] had probable cause to arrest appellant without a warrant, this probable cause to arrest should not be inferred to Collins and Jones."

The argument is answered by *State v. Kerr*, 531 S.W.2d 536, 540[4] (Mo.App.1975), which holds that when a law enforcement agency or officer requests another such agency or officer to arrest a suspect and the latter agency or officer does so, validity of the arrest is determined by the existence of probable cause for the arrest in the demanding authority. As explained earlier, SPD had

probable cause to arrest Appellant for the attempted robbery of September 24, 1992.

We therefore reject Appellant's claim that his statement to Collins and Jones and his shoes were fruits of an illegal arrest. Before leaving Appellant's first point, we note he does not argue that his statement to Collins and Jones was inadmissible because of non-compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant's first point is denied.

■ Appellant's second point is based on a segment of Jones' testimony during questioning by the prosecutor about the journey from Dade County to the Greene County sheriff's office. Jones had testified that Appellant initiated conversation, but Jones had not yet testified about Appellant's incriminating statement referred to in our discussion of Appellant's first point. The dialogue:

"Q ... After he asked why he was under arrest, how did that conversation go?

A He started talking about animals crossing the road, not making it, he asked why he was arrested. I told him I had knowledge of warrants from Canada."

Appellant's lawyer immediately objected. The trial court sustained the objection, instructed the jury to disregard the answer, and ordered it stricken. Appellant's lawyer then moved for a mistrial.

Outside the hearing of the jury, the prosecutor told the trial court, "I didn't know [Jones] was going to do that."

The trial court concluded the prosecutor had "no implication into what has occurred." The trial court added, "I think I removed the prejudice by instructing the jury; therefore, the motion for mistrial is denied."

Appellant maintains the trial court abused its discretion in denying the mistrial in that Jones' reference to "warrants from Canada" was an "impermissible and prejudicial reference to other crimes and bad acts and the court's instruction to the jury to disregard the statement was insufficient to cure the prejudice."

■ Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances. *State v. Sidebottom,* 753 S.W.2d 915, 919–20[2] (Mo. banc 1988), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Having had the opportunity to observe the incident precipitating the request for mistrial, the trial court is in a better position than an appellate court to determine the prejudicial effect, if any, that the incident had on the jury. *State v. Anderson,* 698 S.W.2d 849, 852–53[7] (Mo. banc 1985). Appellate courts are loath to reverse judgments for failure to declare a mistrial unless they are convinced the trial court abused its discretion as a matter of law in refusing to do so. *State v. Crawford,* 619 S.W.2d 735, 740 (Mo.1981).

■ Unresponsive voluntary testimony that indicates an accused was involved in offenses other than the one for which he is on trial does not mandate a mistrial. *State v. Miller,* 680 S.W.2d 253, 255[5] (Mo.App.E.D. 1984). When a State's witness volunteers an unresponsive reference to the accused's involvement in an unrelated crime, an appellate court considers the promptness of the trial court's action in directing the jury to disregard, the offensiveness of the conduct referred to, the isolated nature of the statement, and the lack of evidence that the prosecutor connived to adduce the testimony. *State v. Hall,* 829 S.W.2d 29, 31[2] (Mo.App. E.D.1992).

Here, the trial court immediately sustained Appellant's objection, instructed the jury to disregard the answer, and ordered it stricken. Jones' answer yielded no clue about the crime or crimes for which the "warrants from Canada" were issued, hence there was no disclosure of any offensive conduct by Appellant. Jones' answer was isolated; there was no further hint of any criminal conduct by Appellant in Canada or elsewhere. Finally, the trial court found no indication that the prosecutor intended that Jones mention the alleged warrants.

Appellant argues that Jones may have consciously injected the reference to the alleged

warrants. We have examined the parts of the record cited by Appellant in support of that supposition and find they do not impel such a conclusion.

As observed in *State v. Sanders*, 761 S.W.2d 191, 192[2] (Mo.App.E.D.1988), the mere existence of warrants for an accused's arrest does not prove him guilty of any prior offense, and not mentioning the alleged offenses underlying the warrants minimizes any potential prejudice.

The instant case is similar to *Sanders*, where an arresting officer testified there were "outstanding warrants" for the accused's arrest. The appellate court upheld the trial court's denial of a mistrial. In the instant case, we likewise find no abuse of discretion in the trial court's denial of a mistrial. Appellant's second point is denied.

Judgment affirmed.

### Appeal 19547

Appellant assigns no error regarding the denial of postconviction relief. Consequently, he has abandoned appeal 19547. *State v. Davis*, 900 S.W.2d 649, 651 (Mo.App.S.D. 1995); *State v. Gongora*, 866 S.W.2d 172, 174[5] (Mo.App.S.D.1993). Appeal 19547 is dismissed.

SHRUM, C.J., and PARRISH, J., concur.