STATE of Missouri, Respondent,

v.

Robert BENEDICT, Appellant.

No. SD 29822.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 2010.

Margaret M. Johnston, Columbia, for Appellant.

Chris Koster, Attorney General and John M. Reeves, Assistant Attorney General, Jefferson City, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

A jury convicted Robert Benedict ("Appellant") of second-degree statutory rape in violation of section 566.034 [1] and second-degree statutory sodomy in violation of section 566.064. Appellant was sentenced to two concurrent terms of five years' imprisonment. This appeal followed. We affirm the trial court's judgment.

### Factual and Procedural History

In January, 2006, Appellant, age 40, began engaging in sexual intercourse and oral sex with K.W., a minor. K.W. was fourteen years old when the relationship began. K.W. specifically told Appellant her age. Appellant engaged in sexual activity with K.W. approximately once a week, which ultimately stopped in the fall of 2006. During this time, Appellant and K.W. communicated with each other via emails, text messages, and cell phones. K.W.'s mother notified the police after she discovered emails and pictures on K.W.'s phone indicating Appellant had a sexual relationship with K.W. Appellant was then charged with statutory rape and statutory sodomy in the second degree.

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

On January 11, 2008, Appellant's counsel viewed and copied the prosecutor's file pursuant to its open-file policy. Under the open-file policy, defense counsel may inspect and copy the prosecutor's file at any time. On February 20, 2008, Appellant's counsel filed a discovery request for any documents or objects originally belonging to Appellant that the State planned to introduce into evidence at trial. In the same month, Appellant's counsel was informed that evidence from Appellant's computers was still in the possession of the Springfield Police Department and counsel was given the procedure to obtain copies of the evidence there. On March 21, 2008, at Appellant's felony arraignment, Appellant's counsel was again informed of the procedure to access the file materials pursuant to the open-file policy. On March 27, 2008, Appellant's counsel filed a motion to suppress evidence, including Appellant's two laptop computers that were seized from Appellant's residence on the day of his arrest. Computer disks ("CDs") containing results of the forensic examination of Appellant's computer were placed in the prosecutor's open file in April, 2008.

At a suppression hearing on July 14, 2008, John Henderson, a computer forensic investigator for the Springfield Police Department, testified that he conducted a forensic examination of both laptop computers. Mr. Henderson had a hard copy of the results and stated the results were also contained on CDs. The trial court denied the motion to suppress after the hearing.

More than a month before trial, Appellant's counsel requested a review of the prosecutor's file. Due to scheduling conflicts, a meeting could not be set until two weeks before trial. However, the scheduled meeting never occurred. The record before us contains no explanation why the meeting did not take place.

On February 17, 2009, Appellant's counsel filed a motion to compel discovery claiming the State possessed "a recorded statement of [Appellant] thus far not disclosed" and that upon contacting the prosecutor's office, he was referred to the Springfield Police Department. Appellant's counsel further alleged that the Springfield Police Department informed him that its computers had a "virus attack" and thus the police department had been unable to access the recordings for the two weeks prior to February 17, 2009. Appellant's counsel again asked to review the prosecutor's file on February 23, 2009, the day before trial.

On February 24, 2009, the morning of trial, Appellant's counsel filed a motion for continuance. He argued the prosecutor was unavailable to review the file during the months preceding trial, and that new inculpatory information blocked out an area of research that Appellant had developed to challenge the admissibility of K.W.'s cell phone text messages. Appellant's counsel stated he believed there was no intent by the prosecutor to deprive him of this information; rather, it was "a question of schedules, a missed meeting, which I'm not sure why it didn't come out, but it was off my calendar as well." The prosecutor responded that Appellant's counsel had: (1) access through the prosecutor's open-file policy; (2) been informed in February, 2008, that the police department possessed the evidence; (3) the procedure to obtain the evidence; and (4) knowledge that CDs containing the computer examination results were placed in the open file by April, 2008. Appellant's counsel conceded to possessing the CDs, but claimed he was unable to examine them because the Springfield Police Department's computer system was infected with a virus. The prosecutor responded that the virus had only infected the police department's

email system, not the CDs containing the computer analysis results. The trial court denied Appellant's request for continuance.

At a pretrial hearing on February 24, 2009, the trial court sustained Appellant's motion in limine to exclude evidence of text message conversations between Appellant and K.W. discussing his desire for a sexual tryst with K.W. and one of her female friends (a "threesome"), and ordered the State to approach the bench before mentioning that type of evidence.

During K.W.'s trial testimony, the State handed K.W. Exhibits 1 through 28, photocopies of instant messages from her phone. Several messages referenced Appellant's desire to have a threesome with K.W. and her friend. The State asked K.W.:

Q. And you also briefly just mentioned that you would talk—you were talking about things that you would talk about [Appellant] in person about?

A. Yes.

Q. What do you mean by that?

A. Like the ones that ask about—

Q. Without telling me exactly what it says, what do you mean by that?

A. We would talk about like threesomes with my friend, Stephanie.

After this answer, Appellant's counsel objected and requested a mistrial, or alternatively, that a limiting jury instruction be given. The trial court sustained Appellant's objection to exclude Exhibits 1, 2, 3, 4 and 8, instant messages which referenced Appellant's desire to have a threesome. The trial court denied Appellant's request for mistrial and instructed the jury to disregard K.W.'s last answer. During K.W.'s testimony, she also testified she had vaginal and oral sex with Appellant.

During trial, the State introduced into evidence Exhibit 49, a redacted video recording of an interview between Appellant and Officer Hampton. Appellant's counsel made no specific objection to the exhibit. It was admitted into evidence and played for the jury. On the videotape, Officer Hampton read text messages sent from Appellant to K.W. that referenced threesomes at two places in the video. When the jury took a recess halfway through the playing of Exhibit 49, Appellant's counsel objected to the evidence of threesomes. Appellant's counsel believed all references to threesomes had been redacted in accordance with the pretrial motion in limine. The trial court overruled the objection and noted that the exhibit had already been admitted without objection.

On this video, the Appellant also admitted that K.W. performed oral sex on him, that he could in fact be the father of K.W.'s baby if she was pregnant, and that he was the author of the text messages sent to K.W. expressing concern she might be pregnant and that he took her a pregnancy test. These admissions came into evidence without objection.

The jury convicted Appellant on one count of statutory rape and one count of statutory sodomy. He was acquitted on the other statutory sodomy count. This appeal followed.

Appellant contends the trial court abused its discretion in (1) denying Appellant's request for a continuance based on the prejudicial effect of the late disclosure of the State's expert computer analysis; (2) denying Appellant's request for mistrial after K.W. volunteered that she and Appellant talked about having threesomes; and (3) overruling Appellant's objections to evidence in Exhibit 49 referencing threesomes. In response, the State contends there was no abuse of discretion because (1) the computer examination results were available via its open-file policy more than a year before the requested continuance and no prejudice resulted; (2) Appellant suffered no prejudice from K.W.'s state-

ment about threesomes after the trial court issued a limiting instruction and the State adduced overwhelming evidence of Appellant's guilt; and (3) Appellant suffered no prejudice from the threesome references in Exhibit 49 in that the State adduced overwhelming evidence of his guilt. The issues presented for determination here are:

1. Was there late disclosure of computer forensic examination evidence and if so, did prejudice result from late disclosure?

2. Was it an abuse of discretion to deny a mistrial after K.W. volunteered a reference to threesomes?

3. Was it an abuse of discretion to overrule Appellant's objection to the limited portion of Exhibit 49 referring to threesomes?

### *Standard of Review*

 We review each of Appellant's points on appeal for abuse of discretion. The decision to grant a continuance "is within the sound discretion of the trial court." *State v. Wolfe*, 13 S.W.3d 248, 261 (Mo. banc 2000). "A trial court's decision not to grant a mistrial is given 'enormous discretion' on appeal." *State v. Hahn*, 37 S.W.3d 344, 354 (Mo.App. W.D.2001). The lower court's rulings on admissibility of evidence are also reviewed for abuse of discretion. *State v. Bennett*, 218 S.W.3d 604, 610 (Mo.App. S.D.2007). Abuse of discretion only occurs if "a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred. *Heritage Warranty Ins., RRG, Inc. v. Swiney*, 244 S.W.3d 290, 292 (Mo. App. S.D.2008).

### *Analysis*

### *Point I: Denial of Motion for Continuance*

 First, Appellant asserts that his defense was materially prejudiced after he requested discovery one year prior to trial and did not receive computer forensic examination evidence until February 23, 2009, the day before trial. He alleges the State was unavailable to review the file for updates during the months preceding trial. The State argues that the trial court did not err as the State's "open-file policy" made all the seized materials on Appellant's laptop computers available to Appellant more than a year before the requested continuance.

At issue here is whether computer forensic examination evidence was disclosed late and if it was, whether prejudice resulted from it.

 "A continuance for counsel's trial preparation is not warranted when counsel had adequate time to prepare"; rather, "[r]eversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted." *State v. Christeson*, 50 S.W.3d 251, 261–62 (Mo. banc 2001). Rule 25.07 [2] provides that disclosure shall be accomplished either in a manner agreed to by the State and the defendant, or by the party making disclosure notifying the opposing counsel that the material and information to be disclosed may be inspected, obtained, tested, copied, or photographed at a specified time and place. "Where the defendant has prior knowledge of the state's possession of evidence[ ... ] so as not to have been surprised by its introduction there is no abuse of discretion." *State v. Sykes*, 628 S.W.2d 653, 657 (Mo. banc 1982). Moreover,

---

**2.** All rule references are to Missouri Court Rules (2010).

"[t]he prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire." *State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997).

In this case, the trial court did not abuse its discretion in denying the motion for continuance. The trial court, in announcing its denial of the motion, observed that the materials seized on Appellant's computer were both known and available to Appellant's counsel more than a year before trial. Appellant's counsel was aware of the prosecutor's open-file policy[3] as counsel initially viewed and copied the State's open file on January 11, 2008, and was again reminded about the policy on March 21, 2008. In February, 2008, Appellant's counsel was reminded that the Springfield Police Department possessed computer evidence not yet in the open file and counsel acknowledged he was familiar with the appropriate procedure for obtaining this information. Additionally, the trial court noted that Appellant presumably knew what was on the computers and, in fact, he knew that they were seized on November 5, 2006. The trial court noted that Appellant's counsel had previously filed a motion to suppress the information contained on the computers. The testimony of Mr. Henderson at the suppression hearing further put the Appellant on notice as to the existence of the forensic examination results. Accordingly, there was no late disclosure and Appellant had adequate time to prepare.

Furthermore, Appellant does not show any prejudice resulting from disclosure in this manner. He merely argues that granted more time to prepare, "Appellant *might* have found a defense to the evidence." (emphasis added). However, the computer evidence was cumulative in nature: the conversation in Exhibit 45 (computer printout where Appellant expresses concern K.W. might be pregnant and advises her to terminate the pregnancy) matched the conversations in Exhibits 23 through 27, and Appellant admitted to Officer Hampton that Appellant was the one who talked to K.W. in that text message conversation. Appellant has not shown what evidence he would have developed had a continuance been granted; thus, he has also not made the required strong showing of prejudice to warrant a reversal. *See State v. Christeson*, 50 S.W.3d 251, 261–62 (Mo. banc 2001). There is no showing that the trial court's ruling was against the logic of the circumstances and was so unreasonable as to indicate a lack of careful consideration.

We find there was no late disclosure of computer forensic examination evidence, and that Appellant failed to show any prejudice by the timing of the disclosure. Point I is denied.

### Point II: Denial of Request for Mistrial

In Appellant's second point on appeal, he argues the trial court abused its discretion by not granting a mistrial after K.W. volunteered that she and Appellant talked about having threesomes with her friend. Appellant argues this evidence was irrelevant and inflammatory and that the trial court's limiting instruction was insufficient relief to dispel its prejudicial effect. The State responded that Appellant suffered no prejudice from K.W.'s testimony based on the trial court's limiting instruction and the overwhelming evidence

---

3. The Appellant does not claim the open-file policy is an inappropriate means for the prosecutor to provide discovery.

the State adduced regarding Appellant's guilt.

At issue is whether the trial court abused its discretion in denying a mistrial after K.W. volunteered a reference to threesomes.

■■■■ "A trial court's decision not to grant a mistrial is given 'enormous discretion' on appeal." *Hahn*, 37 S.W.3d at 354. "Unresponsive voluntary testimony that indicates an accused was involved in offenses other than the one for which he is on trial does not mandate a mistrial." *State v. Bringleson*, 905 S.W.2d 882, 888 (Mo.App. S.D.1995). Rather, an appellate court considers the "promptness of the trial court's action in directing the jury to disregard, the offensiveness of the conduct referred to, the isolated nature of the statement, and the lack of evidence that the prosecutor connived to adduce the testimony." *Id.* Additionally, "[i]t is normally presumed that the jury follows the instructions given it by the trial judge." *Hahn*, 37 S.W.3d at 354 (citing *State v. Lyons*, 951 S.W.2d 584, 598 (Mo. banc 1997)).

Here, the trial court promptly issued a limiting instruction. It ordered the jury to disregard K.W.'s last statement. We presume the jury in fact followed this instruction. *See Hahn*, 37 S.W.3d at 354. The statement was isolated; K.W. did not mention it again during her testimony, the State did not attempt to use or emphasize the response during the trial, and it was not mentioned in the State's closing argument. Finally, there was no indication that the statement was invited by the State. To the contrary, the prosecutor explicitly instructed K.W. not to recite the content of the text messages as a preface to the question.

The factors set out in *Bringleson* direct us to examine the promptness of the limiting instruction, the offensiveness of conduct referenced, the isolated nature of

statement, and the prosecutor's intent to invite the evidence. In considering those factors, we conclude there is no showing the trial court's denial of Appellant's request for a mistrial was clearly against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. The trial court did not abuse its discretion in denying a mistrial after K.W. volunteered a reference to threesomes. Point II is denied.

### Point III: Overruling Objection to Evidence in Exhibit 49

■■■■ Finally, Appellant claims the trial court abused its discretion by overruling Appellant's objection to evidence referring to threesomes contained in State's Exhibit 49, the video interview of Appellant with police. In support, Appellant asserts the trial court previously held "such evidence was probably irrelevant and should not be introduced without the State first approaching the bench" and the ruling was confirmed when K.W. inadvertently mentioned it during her trial testimony and the trial court gave a limiting instruction. The Appellant further argues that because the prejudicial evidence remained in Exhibit 49, the effect was compounded when the jury viewed it again during deliberation.

The State asserts the trial court did not abuse its discretion in overruling the Appellant's objection to the threesome content of Exhibit 49 because Appellant suffered no prejudice from this ruling based on the overwhelming evidence adduced by the State.

The issue for determination is whether the trial court abused its discretion in overruling Appellant's objection to the limited portion of Exhibit 49 referring to threesomes.

■■■■ We review the lower court's rulings on admissibility of evidence for

abuse of discretion. *Bennett,* 218 S.W.3d at 610. Reversal is appropriate " 'only if the error was so prejudicial that it deprived the defendant of a fair trial.' " *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999) (internal citation omitted). " 'A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have [reached a different conclusion] but for the erroneously admitted evidence.' " *State v. Chism,* 252 S.W.3d 178, 185 (Mo.App. W.D.2008) (quoting *State v. Blakey,* 203 S.W.3d 806, 814 (Mo.App. S.D.2006) (internal quotation marks omitted)). Factors used in determining prejudice include the amount of the erroneously admitted evidence and " 'the extent to which the evidence was [referenced] during the trial.' " *Id.* (quoting *Blakey,* 203 S.W.3d at 815) (internal quotation marks omitted).

In this case, the record shows the trial court did not abuse its discretion and there was no showing of outcome-determinative prejudice. The trial court noted that Exhibit 49 had already been admitted without objection, the jury was halfway through viewing it, and that it was too late to go back and edit it. Importantly, the trial court found that "in the context of this lengthy interrogation of this Defendant [the references to threesomes] it is not of great significance." The trial court went on to consider the nature of the statements referencing threesomes and concluded that there was no way to parse them out so the videotape would be played the way it was. The record shows that trial court's decision was carefully considered and logical in the circumstances.

This evidence was not so prejudicial as to require reversal. Only one minute of the eighty-three-minute-long interrogation video referenced evidence of Appellant's desire for a threesome. Again, this evidence was not relied upon to support the State's case and was not mentioned in the State's closing argument. It is unlikely this evidence influenced the jurors to create a reasonable probability that the jury would have acquitted but for its admission as overwhelming evidence of Appellant's guilt was adduced during trial. This evidence was: K.W.'s testimony that she performed oral sex on Appellant; had intercourse with him; Appellant's admission that K.W. performed oral sex on him; Appellant's admission that he could be the father of K.W.'s baby if in fact she was pregnant; Appellant's admission that he was the author of the text messages sent to K.W. expressing concern that she might be pregnant; and Appellant's action in obtaining a pregnancy test for K.W. After considering the brief references to threesomes in the video with, and balanced against the overwhelming evidence of Appellant's guilt, we find it unlikely the jury would have reached a different conclusion but for this evidence. There is no showing that the trial court's ruling was against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration.

The trial court did not abuse its discretion in overruling Appellant's objection to the limited portion of Exhibit 49 referring to threesomes. Accordingly, Point III is denied.

The trial court's judgment is affirmed.

SCOTT, C.J. and RAHMEYER, JJ., concur.