

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI,           )
                             )
    Plaintiff-Respondent,    )
                             )
v.                           )           No. SD33381
                             )
FRANK JAMES SHERIDAN,        )           **Filed:  Sept. 30, 2015**
                             )
    Defendant-Appellant.     )

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack Goodman, Circuit Judge

**<u>AFFIRMED</u>**

A jury found that Frank James Sheridan ("Defendant"), either "acting alone or in concert with another," had committed the class B felony of attempting to manufacture methamphetamine "on or about December 31, 2011[.]" *See* section 195.211.[1]  Defendant claims he is entitled to a new trial because the trial court

> abused its discretion in permitting testimony and photos relating to stolen four-wheelers[2] found at the property in question, because this testimony violated [Defendant]'s rights to due process and to be tried only for the crime with which he was charged . . . in that this evidence had no legitimate tendency to establish [Defendant]'s guilt[.]

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000.
[2] Although Movant uses the plural here, our review of the testimony and photographs cited by Movant indicate that only a single four-wheeler was at issue.

1

Finding no merit in this claim, we affirm Defendant's conviction.[3]

## Facts[4]

Five or six different people, including Defendant, had been purchasing pseudoephedrine from various stores with each person listing as his or her residence a particular address in Lawrence County. Suspecting illegal drug activity, several law enforcement officers went to that address a little past midnight on the date in question to conduct a "knock-and-talk[.]" The person who answered the door ("Mr. Wilson") allowed the officers to enter. Several other people were in the home, and the officers immediately smelled burnt marijuana. They also saw a straw containing a white powdery substance on a coffee table. Mr. Wilson told the officers that the straw was his and that the powder was methamphetamine.

Mr. Wilson told the officers that he lived in the home, but he said that it was owned by Defendant, his uncle. Defendant was not at home, so one of the officers obtained his telephone number and called him. Defendant said that he would come to the house, and he gave the officers permission to search it. Mr. Wilson also told the officers that they could search the home, and they located a marijuana pipe, still warm to the touch, underneath a chair. When the officers asked the other persons in the home what they had in their pockets, they began turning them out and laying the contents down on the coffee table. The resulting collection contained several other "illegal items[.]" A

---

[3] Defendant properly preserved the issue for appellate review by objecting to the admission of the evidence at trial on the same ground he now asserts on appeal and by asserting it again in his motion for new trial.

[4] Defendant does not challenge the sufficiency of the evidence supporting his conviction. As a result, we focus our recitation of the facts on those necessary to understand and address Defendant's point on appeal, and we view them in the light most favorable to the verdict. *See State v. McDowell*, 832 S.W.2d 333, 334 (Mo. App. E.D. 1992).

coffee filter located elsewhere in the home contained residue that later testing revealed to be methamphetamine.

A search outside the home yielded a broken "meth pipe" found inside a "burn barrel," a green bottle containing "residue," and an empty Coleman fuel can -- all of which officer Mike Thorn believed to be components of a methamphetamine lab. Officer Thorn was trained to collect the components of a methamphetamine lab, and he had done so on numerous occasions. Officer Thorn also noticed a "four-wheeler" "that had been previously stolen" sitting up against the house.

When Defendant arrived, he removed a padlock from his bedroom door so the officers could search the bedroom. Inside that bedroom, the officers located marijuana seeds and a marijuana pipe, an empty packet of pseudoephedrine pills, a trash can, and a propane torch.

**Analysis**

The evidence about which Defendant complains was adduced as follows during the State's direct examination of Officer Thorn:

> Q. Okay. Now, was there anything else that you found outside?
>
> A. No, not that I can recall.
>
> Q. Was there any --
>
> A. Well, I take that back. As we was looking around there, sitting back against the house itself, which is -- the house is really a garage that had been changed over to a house, there was a four-wheeler sitting back up against the house. I talked to one of the deputies and I said, "See if you can see the VIN on that four-wheeler. I want to check it while we're out here," and he was able to obtain the VIN.
>
> BY [DEFENSE COUNSEL]: Judge, at this time I'm going to

3

tender an objection. I don't see what this four-wheeler has to do with the attempt to manufacture methamphetamine.

BY THE COURT: Counsel, approach.

(Counsel approached the bench and the following proceedings were held:)

BY [DEFENSE COUNSEL]: Judge, in accordance with the motion in limine that I filed, I need to continue to try to make a record of this. I object to the testimony about a stolen four-wheeler because I think it has no relevance that will make it any more likely that methamphetamine was attempted or not. It doesn't matter what is associated with it. That just doesn't make it more likely or not and I think it's just evidence of other crime and it's irrelevant.

BY [PROSECUTOR]: I'll get to the relevance very quick and I'll get off of it.

BY THE COURT: If you can get there very quickly, do. The object [sic] is overruled.

(The proceedings returned to open court)

BY THE COURT: [PROSECUTOR], you may proceed.

BY [PROSECUTOR]: Thank you, Your Honor.

Q. (By [PROSECUTOR]) You found this stolen four-wheeler. What is the importance of stolen items at such a place?

A. Well, usually we'll find stolen items. *People like to steal things and then they'll trade it for the meth because they don't have the money to supply their habit.* And once you first try meth, it usually becomes a really bad habit.

Q. So in your experience -- *you've been in other meth labs before*?

A. *Yes.*

4

Q.      *Is it common to see stolen items*?

A.      *Yes, it is.*

        BY [DEFENSE COUNSEL]: Judge, I would restate my objection.
                              I don't believe this is relevant to the
                              attempt to manufacture.

        BY THE COURT:             The ruling be [sic] the same. [5]

(Emphasis added.)

We review a trial court's decision to admit or exclude evidence for abuse of

discretion. ***State v. Ise***, 460 S.W.3d 448, 459 (Mo. App. W.D. 2015).

> The general rule in Missouri is that evidence must be both
> logically and legally relevant in order to be admissible. Evidence is
> logically relevant if it tends to make the existence of any fact that is of
> consequence to the determination of the action more probable or less
> probable than it would be without the evidence, or if it tends to
> corroborate evidence which itself is relevant and bears on the principal
> issue of the case. The determination of legal relevance—the balancing of
> the probative value of the proffered evidence against its prejudicial effect
> on the jury—rests within the sound discretion of the trial court.

***State v. Tisius***, 92 S.W.3d 751, 760 (Mo. banc 2002) (citations and quotation omitted).

"A trial court abuses its discretion when a ruling is clearly against the logic of the

circumstances then before the court and is so arbitrary and unreasonable as to shock the

sense of justice and indicate a lack of careful consideration." ***State v. Biggs***, 91 S.W.3d

127, 133 (Mo. App. S.D. 2002)

Evidence of uncharged "separate and distinct crimes" cannot be used to

demonstrate the defendant's propensity to commit the charged crime. ***State v. Vorhees***,

248 S.W.3d 585, 587 (Mo. banc 2008). "[V]ague references to other uncharged crimes

are insufficient to warrant reversal for trying a defendant for uncharged crimes. The

---

[5] The other relevant objections, based upon the same grounds and again overruled by the trial court, were lodged by Defendant when photographs of the stolen ATV were offered into evidence by the State.

5

defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." *State v. Key,* 437 S.W.3d 264, 270 (Mo. App. W.D. 2014) (internal quotation and citation omitted).

The evidence at issue

> must show *the accused* committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct. *State v. Stoner,* 907 S.W.2d 360, 364[11] (Mo.App. W.D.1995). Vague remarks cannot be characterized as clear evidence to associate *the accused* with other crimes. *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989); *Stoner,* 907 S.W.2d at 364[11].

*State v. Ponder*, 950 S.W.2d 900, 911-12 (Mo. App. S.D. 1997) (emphasis added).

In the instant case, we do not need to determine whether the trial court erred in admitting the challenged testimony and photographs because, even if we were to find that it amounted to an abuse of discretion, we will not reverse unless we find that such error was so prejudicial that it deprived the defendant of a fair trial. *State v. Howery*, 427 S.W.3d 236, 250 (Mo. App. E.D. 2014) (internal quotation and citation omitted). "Error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial[,]" and the defendant bears the burden of demonstrating both error and resulting prejudice. *Id.*; *State v. Fry*, 197 S.W.3d 211, 213 (Mo. App. S.D. 2006).

Defendant has failed to demonstrate such resulting prejudice here. The evidence established that Defendant owned the residence where a white powdery substance, admitted to be methamphetamine by one of the residents, was on the coffee table, and other methamphetamine residue was located in a coffee filter found in another part of the house. In Defendant's padlocked bedroom, officers found an empty package of pseudoephedrine in the trash can and a propane torch behind the bed. A broken "meth

6

pipe" was located on top of a "burn barrel" outside the house, in close proximity to an empty Coleman fuel can and a bottle containing "residue" that Officer Thorn identified as components of a "meth lab."

One of the persons residing in the house testified that she saw several people give pseudoephedrine to Defendant in exchange for methamphetamine; she saw Defendant crushing pseudoephedrine pills in a bowl; she was not allowed inside Defendant's padlocked room when he was cooking methamphetamine; and she had received methamphetamine from Defendant. This witness also identified scales and lithium batteries in the house that she claimed were not hers. Defendant admitted to purchasing pseudoephedrine and selling it to someone in a different town, and when Defendant and others at his home had been purchasing pseudoephedrine from various stores, Defendant had used two different forms of identification, each listing a different date of birth.

In contrast to this overwhelming evidence of Defendant's guilt, nothing in either Officer Thorn's testimony or the photographs of the ATV directly indicated that Defendant was the person who had either stolen the ATV or was aware that it had been stolen. Several persons lived in the home with Defendant, and yet others were present at the time of the search. Such evidence did not result in prejudice to Defendant as it did not indicate that he "had been accused of, has been convicted of, or definitely was associated with[,]" the other crimes or misconduct. *State v. Stoner,* 907 S.W.2d 360, 364 (Mo. App. W.D. 1995).

Defendant's point is denied, and his conviction is affirmed.


DON E. BURRELL, P.J. - OPINION AUTHOR
NANCY STEFFEN RAHMEYER, J. - CONCURS
GARY W. LYNCH, J. - CONCURS