KURT S. ODENWALD, Judge
Introduction
Devon M. Robinson ("Robinson") appeals from the trial court's judgment after a jury found him guilty on one count of first-degree robbery and one count of armed criminal action. Robinson raises two points on appeal. In Point One, Robinson argues that the trial court erred in overruling his motion to suppress Victim's pre-trial and in-court identifications because the identification procedures were impermissibly suggestive. Because the trial court did not clearly err in permitting Victim's identifications, we deny Point One. In Point Two, Robinson alleges that the trial court plainly erred by not intervening sua sponte to prevent testimony regarding Robinson's prior arrest. Because Robinson did not suffer a manifest injustice or miscarriage of justice, we deny Point Two. We affirm the trial court's judgment.
Factual and Procedural History
Late one night, Victim drove his vehicle to a gas station ATM to withdraw cash.
*24 Victim parked his vehicle near the gas-station entrance. The area was well-lit. Victim entered the gas station, used the ATM for a withdrawal, obtained cash, and then left the gas station. As Victim walked out the gas-station door, an unmasked man approached him while holding a gun. The man demanded that Victim empty his F*ing pockets, repeated this phrase, and wanted Victim to turn out his pockets. Victim complied. The man took Victim's money and left, threatening to shoot Victim if he ever saw him again. Victim returned to his vehicle, but instead of driving away, called the police while still watching the man. The man remained near the gas station, but left when noise from the approaching emergency vehicles became apparent. Victim described the robber to the police. According to Victim, the man was an African-American male, approximately twenty- to twenty-five-years old and between five-eight and five-ten in height. Additionally, the man had a medium build, a medium complexion, a short Afro hairstyle, and a short goatee. Two cameras, erected near the gas station, recorded the robbery.
Detective Philip Harden ("Det. Harden") devised a photographic lineup for Victim's viewing. Det. Harden compiled the photographs, using an old photograph of Robinson and five other photographs generated by a computer. In the photograph, Robinson had braided hair, and facial hair around his chin and the side of his face. Det. Harden labeled Robinson's photograph as photograph number two. Detective Timothy Banks ("Det. Banks"), a blind administrator,[1] showed the photographic display to Victim sequentially, approximately seven days after the robbery. Det. Harden was present but did not interact with Victim during the photographic display.
Victim was unable to make a positive identification, allegedly because the photographs only clearly displayed a portion of some of the participants' faces. But, Victim narrowed the photographs to two potential persons who "looked very similar" to his assailant. Victim admitted that during the robbery, he was focused more on the gun than what his assailant was wearing or what he looked like. However, Victim told police that, if he saw the participants in person and was able to see their entire body at once, he would be able to determine if they were his assailant.
The next day, the detectives showed Victim a physical lineup. Robinson was the only participant in common between the six-person-photographic display and the four-person-physical lineup. The detectives emphasized before the lineup that Victim was not required to identify his assailant. Victim viewed the participants sequentially. Robinson was the first participant in the physical lineup. As soon as Robinson appeared, Victim immediately and confidently recognized him as his assailant. Further, Victim requested that Robinson say "empty your F*ing pockets." Victim testified that Robinson's statement in the lineup sounded exactly the same as the night Victim was robbed. Victim explained that "yeah, that's the guy. I feel like he's robbing me right now."
The State charged Robinson with one count of first-degree robbery and one count of armed criminal action. The trial court denied Robinson's pre-trial motion to suppress Victim's identification. The case proceeded to a jury trial.
During trial, the State questioned Detective Derrick Frye ("Det. Frye") regarding Robinson's arrest:
*25 Q: And actually did you take him into custody twice in connection with this case?
A: I took him into custody prior to this case, I took him into custody after this also.
Q: Now, in connection with this case, can you describe for the jury when and where, do you remember what day it was you took him into custody?
A: Actually let me correct that. I took him into custody twice, like you said. Both happened after the robbery, but one of mine was before the other. So the robbery happened, I arrested him, and then I arrested him again.
Q: And was the first time you arrested him on April 20th, 2016, or the 19th or 20th, somewhere in that range?
A: It was somewhere in that range.
Q: And can you describe for the jury at that point were you aware he was the suspect in a robbery?
A: The first time I arrested him I had no idea who he was.
Q: Then the second time you took him into custody, were you aware he was a suspect in the robbery at the Phillips 66?
A: The second time I arrested him, yes.
Robinson did not object to this line of questioning.
The jury found Robinson guilty of both first-degree robbery and armed criminal action. The trial court denied Robinson's post-trial motions and sentenced him to twelve years in prison. Robinson now appeals.
Points on Appeal
Robinson raises two points on appeal. In Point One, Robinson argues that the trial court erred in denying his motion to suppress Victim's identifications because the identification procedures were impermissibly suggestive. Specifically, Robinson alleges that the identification was impermissibly suggestive because Victim was unable to identify Robinson in a six-person-photographic lineup but subsequently identified him in a four-person-physical lineup. Additionally, Robinson contends that he was presented as the first person in both lineups and was the only person in common between the two lineups. In Point Two, Robinson contends that the trial court plainly erred by permitting testimony regarding Robinson's prior arrest because it was irrelevant and was admitted only as improper propensity evidence.
Discussion
I. Point One: Victim's Identifications of Robinson Were Not Impermissibly Suggestive
A. Standard of Review
In reviewing the trial court's denial of a motion to suppress a witness's identifications, we affirm the trial court's ruling unless it was clearly erroneous. See State v. Williams, 277 S.W.3d 848, 851 (Mo. App. E.D. 2009). "If the ruling is plausible, in light of the record viewed in its entirety, we should not reverse, even if we would have weighed the evidence differently." Id."We review the factual findings only to determine if they are supported by substantial evidence, viewing the facts in the light most favorable to the trial court's ruling and disregarding contrary evidence and inferences." Id.
B. Not Impermissibly Suggestive
Robinson's challenge to Victim's out-of-court and in-court identifications focuses on his claim that his photograph was displayed in the first position of the photographic lineup that occurred seven days after the robbery, he was again presented in the first position in the physical lineup, *26 and he was the only person presented to Victim in both the photographic lineup and the physical lineup.
"[A] trial court has broad discretion in the admission of evidence, and we will reverse a conviction based on an evidentiary error only if the error was so prejudicial that it deprived the defendant of a fair trial. Such prejudice occurs when the errors are more likely than not to have affected the outcome." State v. Evans, 455 S.W.3d 452, 455 (Mo. App. E.D. 2014) (internal quotations omitted). Specifically, to prove Victim's identification was so prejudicial that it deprived Robinson of a fair trial, Robinson must show that "the pretrial identification procedure was unnecessarily suggestive and the suggestive procedure made the identification unreliable." Williams, 277 S.W.3d at 851 (citing State v. Middleton, 995 S.W.2d 443, 453 (Mo. banc 1999) ). "A procedure is unnecessarily suggestive if the identification results not from the witness's recollection of firsthand observations, but rather from the procedures or actions employed by the police." Id. (citing State v. Lanos, 14 S.W.3d 90, 95 (Mo. App. E.D. 1999) ).
Here, Victim was unable to identify Robinson in the photographic display. The next day, Robinson, but no one else from the photographic display, was included in a physical lineup. Victim subsequently identified Robinson with certainty. When reviewing the record in totality, we are not persuaded that Robinson's presence as the only common participant in both the photographic display and physical lineup rendered the subsequent physical lineup impermissibly suggestive. See Williams, 277 S.W.3d at 851 ; State v. Glessner, 918 S.W.2d 270, 277 (Mo. App. S.D. 1996) (identification was not impermissibly suggestive where witness was unable to identify defendant in physical lineup, but later identified defendant in a photographic lineup, with defendant being the only common participant in the two lineups).
While Robinson posits other circumstances tainted the lineup procedures, none of these circumstances support his claim that either of the lineups were impermissibly suggestive. The number of participants did not render the lineups improperly suggestive. See, e.g. State v. White, 518 S.W.3d 288, 292 (Mo. App. E.D. 2017) (a six-person photographic lineup was not impermissibly suggestive); State v. Floyd, 347 S.W.3d 115, 126 (Mo. App. E.D. 2011) (a four-person physical lineup was not impermissibly suggestive). Also, Robinson's position in both lineups was not impermissibly suggestive. Robinson's photograph was the second photograph shown to Victim in the photographic display[2] and Robinson was positioned first in the physical lineup. Robinson fails to explain, and the record does not show, how his position within the sequential lineups created a risk of improper identification or influenced Victim's selection. Robinson does not allege any other irregularities in the lineups. Viewed in their totality, neither the photographic display nor the physical lineup was impermissibly suggestive.
Contrary to Robinson's contentions, the detectives used procedures ensuring that Victim's identification remained free from improper suggestion. The detectives presented both lineups sequentially. A blind administrator conducted both lineups. Det. Harden selected five photographs that *27 looked similar to Robinson. The detectives assured Victim before both lineups that he was not required to identify his assailant from the lineup participants. Victim was certain of his identification. We are confident that the procedures used did not influence Victim's identification of Robinson as his assailant. Additionally, Robinson was free to cross-examine Victim about his failure to identify his assailant from the photographic display, and other circumstances surrounding Victim's identification.
Because we do not find the identification procedures impermissibly suggestive, we need not review the reliability of the identification. See State v. Chambers, 234 S.W.3d 501, 514 (Mo. App. E.D. 2007) ; State v. Glover, 951 S.W.2d 359, 363-64 (Mo. App. W.D. 1997) (if movant fails to establish that police procedures were unduly suggestive, "the factors considered in the reliability prong of the test go to the weight of the identifications and not to their admissibility."). The trial court did not clearly err in failing to suppress Victim's pre-trial or in-court identifications of Robinson. Point One is denied.
II. Point Two: No Plain Error by Allowing Evidence of Prior Arrest
Robinson argues that the trial court plainly erred when it failed to sua sponte intervene and prevent the admission of his unrelated arrest as improper propensity evidence. Robinson concedes that he did not object at trial, nor was this issue included in his motion for a new trial; thus, we review Robinson's claim of error, if at all, under the plain-error standard pursuant to Rule 30.20.[3] See State v. Kunonga, 490 S.W.3d 746, 755 (Mo. App. W.D. 2016).
A. Plain-Error Standard
We review claims of plain error under a two-prong test. Id."In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear." Id. (internal citation omitted). If we find an "evident, obvious, and clear" error, then we look to the second prong, where we consider whether "a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." Id. Where a jury renders a verdict, "[t]o hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." Id. (quoting State v. Roper, 136 S.W.3d 891, 903 (Mo. App. W.D. 2004) ). Robinson bears the burden of showing both that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice. Id.
B. No Plain Error
Robinson claims that the trial court plainly erred in permitting the admission of his unrelated arrest as improper propensity evidence at trial. Specifically, Robinson alleges that evidence of his previous arrest was prohibited because it was evidence of prior bad acts and uncharged crimes, was not relevant, and did not meet any exceptions permitting its admission. During trial, Det. Frye testified that he took Robinson into custody twice. Det. Frye explained that "the robbery happened, I arrested him, and then I arrested him again." Det. Frye stated that the first time he arrested Robinson, he had "no idea who he was."
After a careful review, Robinson's claim does not facially establish substantial grounds for believing that a manifest injustice occurred. Thus, Robinson does not meet the initial threshold test to permit our review under the plain-error standard.
*28 We, however, explain ex gratia why Robinson's claim does not amount to plain error.
"Propensity evidence is 'evidence of uncharged crimes, wrongs, or acts' used to establish that defendant has a natural tendency to commit the crime charged." State v. Shockley, 410 S.W.3d 179, 193 (Mo. banc 2013) (quoting State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993) ). "The well-established general rule is that proof of the commission of separate and distinct crimes is not admissible[.]" Id. (quoting State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954) ).
We note, however, that "[v]ague references to other uncharged crimes are insufficient to warrant reversal for trying a defendant for uncharged crimes. The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." State v. Sheridan, 486 S.W.3d 358, 362 (Mo. App. S.D. 2015) (internal citations omitted). "The evidence at issue must show the accused committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." Id. (quoting State v. Ponder, 950 S.W.2d 900, 911-12 (Mo. App. S.D. 1997) ). Vague remarks are not "clear and definite," and are not sufficient to associate the accused with other crimes. Id.
The record shows that Det. Frye merely mentioned that he arrested Robinson twice. Det. Frye simply said that he "took him into custody prior to this case" and that the first time Det. Frye took Robinson into custody, he "had no idea who he was." Robinson reasons that from Det. Frye's testimony, the jury reasonably could infer that his first arrest was not connected to the robbery charge. Importantly, Det. Frye did not articulate the crime of which Robinson was suspected at the time of his first arrest. The record before us does not suggest that Robinson's initial arrest resulted in any charge, much less a conviction. Moreover, our review of the record does not reveal evidence that Robinson appeared to be "definitely associated with" other crimes or misconduct. See id. Robinson's argument is unavailing. Det. Frye's brief reference to Robinson's "first" arrest is simply too vague to constitute improper propensity evidence. See id. No miscarriage of justice or manifest injustice occurred. Point Two is denied.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., J., concurs.
Sherri B. Sullivan, J., concurs.

Det. Banks explained at trial that a blind administrator presents the lineup to the witness but does not know which participant is the suspect.

Robinson argues that one component of the suggestive police procedures used here was that the detectives presented Robinson first in both lineups. However, the record does not reflect that the detectives displayed Robinson first in the photographic lineup. Det. Harden testified that he labeled Robinson's photograph as number two and that Det. Banks presented Robinson's photograph second in the lineup.

All Rule references are to Mo. R. Crim. P. (2015).