

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37256 |
| | ) | |
| DARIUS E. BROWN, | ) | **Filed: February 24, 2023** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

The Honorable William E. Hickle, Judge

**<u>AFFIRMED</u>**

Darius E. Brown ("Defendant") appeals his convictions after a jury found him guilty of (1) felony trafficking in the second degree for knowingly possessing more than 20 milligrams of fentanyl in violation of section 579.068 (Count I), (2) felony possession of a controlled substance for possessing cocaine in violation of section 579.015 (Count II), and (3) felony possession of a controlled substance for possessing methamphetamine in violation of section 579.015 (Count III).[1]

Defendant raises three points on appeal: (1) the trial court erred in overruling Defendant's motions for judgment of acquittal for trafficking and possession because the

---

[1] All statutory references are to RSMo Cum. Supp. (2020), unless otherwise indicated.

1

State did not present sufficient evidence "from which a rational trier of fact could have reached a 'subjective state of near certitude' that [Defendant] knowingly possessed the controlled substances in the glove compartment"; (2) that the trial court abused its discretion in overruling defense counsel's objection to an unredacted version of State's Exhibit 1 (the body cam video) because the evidence of the gun[2] found in the trunk of the car Defendant was driving was irrelevant and implied that he was a violent person who had committed uncharged crimes which were inadmissible character and propensity evidence; and (3) the trial court abused its discretion in overruling defense counsel's request for a mistrial when the State asked Corporal Erican Sugg ("Corporal Sugg") of the Maries County Sheriff's Department if Defendant had a warrant for Defendant's arrest out of Miller County because the State's questions "had no purpose other than showing [Defendant] was a bad person who was more likely to have committed the charged offenses." Finding no merit in any claim, we affirm the trial court's judgment.

**Facts and Procedural Background**

*Trial*

About 11:00 p.m., on November 25, 2020, Corporal Sugg was on patrol when he pulled over a car for not having an illuminated license plate.[3] Defendant was driving and there were two passengers, Macey Shelton who was in the front passenger's seat and Gregory Haggard who was in the backseat. Upon approaching the car, Corporal Sugg detected a marijuana odor. Corporal Sugg asked Defendant if there was marijuana in the car and Defendant replied, "None. We smoked earlier." Corporal Sugg asked if any of the three had medical marijuana cards and they all said they did not.

---

[2] Defendant admitted that it was a "gun box" in his Reply Brief.

[3] Corporal Sugg discovered the license plate was registered to a different car during the stop.

Defendant told Corporal Sugg that he borrowed the car and gave the car owner's name. Corporal Sugg searched the car. The glove compartment was locked, and the key to unlock it was on a keychain with the ignition key, which was in the ignition and under Defendant's control. Inside the glove compartment Corporal Sugg found two locked containers within Defendant's arm's length. One container appeared, from the outside, to be a dictionary. It was grayish-blue in color, and when Corporal Sugg opened the cover there was a gray-in-color metal lid with three rollers with numbers on it and a knob – a combination lock. There was a gap between the lid and the wall, and Corporal Sugg could see a crystal-like substance covered in plastic. When he opened it, he found five bags of white substance and a set of digital scales underneath what appeared to be a cell phone cover. The other container was a black cylindrical container.[4] Corporal Sugg also located multiple cell phones in the vehicle, with two of them sitting in the driver's seat separate and apart from Defendant's cell phone, along with several unused baggies of various sizes. Corporal Sugg arrested Defendant and his two passengers.

Corporal Sugg transported Defendant to the Maries County Sheriff's Department. When Corporal Sugg removed Defendant's handcuffs, he observed Defendant holding a key ring with two keys on it. While processing the evidence, Corporal Sugg used one of the keys to open the cylindrical container that had been locked in the glove compartment. Corporal Sugg field tested the substances inside the baggies seized from the dictionary-style container. Three of the baggies tested positive for cocaine, one tested positive for

---

[4] Photographs of the dictionary-style container, cylindrical container, keys, and cell phone cover were admitted into evidence at trial as State's Exhibit 2.

methylone, and one tested positive for methamphetamine.[5]  The baggies were taken to the Missouri State Highway Patrol for further testing.  The testing found the substances were fentanyl, cocaine (base and/or salt), and methamphetamine.[6]

*Facts Pertinent to Point II*

Prior to trial, Defendant filed a motion to suppress evidence obtained from the search of the car he was driving and any evidence of the search of the car.  The trial court denied the motion to suppress following a hearing.  Defendant also filed a motion in limine seeking to exclude portions of audio or video recordings made by Corporal Sugg, specifically to redact prejudicial material from a body cam video.  After a hearing, the court ruled that the video could be played up to the timestamp of 12:47:12, but Defendant's counsel continued to object.  Neither the motion to suppress nor the motion in limine made any reference to a gun found in the trunk of the car or to any statements regarding a gun box or a gun.  No evidence was presented at the suppression hearing about the search of the trunk or contents of the trunk.

At a pre-trial hearing the trial court announced an agreement had been reached where the State would play the first twenty minutes of the body cam video, up to the 12:47:12 timestamp, which included the discovery of the controlled substances.  The trial court stated the State would stop playing the video before Defendant was handcuffed and

---

[5] Photographs of the field tests and weights of the aforementioned drugs were admitted into evidence as State's Exhibits 3-6.

[6] The Missouri State Highway Patrol's testing found 27.10 grams of cocaine (salt) in one bag, 3.55 grams of cocaine in another bag, and 1.47 grams of fentanyl.  A copy of the Certified Drug Chemistry Report by the Missouri State Highway Patrol was admitted into evidence at trial as State's Exhibit 25.  A Missouri State Highway Patrol criminalist, Bradley Ellis, testified that 1.47 grams of fentanyl was equivalent to 1,470 milligrams, 73 times more than 20 milligrams.

before statements were made that Defendant was seeking to exclude. The prosecutor suggested defense counsel be given control of the pause button to make sure the video was stopped in time. When asked if that arrangement was acceptable, defense counsel responded:

> Judge, I would rather do it prior rather than doing – I would rather have the opportunity to do it in the first 20 minutes, because as I recall it, there's some things, particularly about when he calls it in and about the PC. I understand. But the risk, I think, is on the State and not on me.

The court instructed defense counsel to make an objection to call to its attention any portions of the first twenty minutes of the video that defense counsel wanted to exclude before the video was played, and the court would rule on it.

Prior to the video being played for the jury, the court indicated it had reviewed the video and would allow it to be played up to the 12:47:12 timestamp, which would be right after when the controlled substances were discovered. Defense counsel objected but said that he believed that the court would overrule those objections. The trial court noted that Defendant had requested an earlier portion of the video be excluded which included the search of Defendant and the passengers. Defendant did not dispute the trial court's characterization of the objection and the trial court stated it would allow that portion of the video to be shown. When the State moved to admit the video at trial, Defendant renewed his motion to suppress.

The video was played over Defendant's objection. At the 12:34:10 mark of the video, Corporal Sugg unlocked the car's trunk and searched through it. Corporal Sugg could be heard asking if anyone knew who a firearm belonged to.[7] No gun was visible on the video, and no response is audible. Corporal Sugg closed the trunk shortly thereafter.

---

[7] A copy of the video was admitted into trial as a State's Exhibit 1.

5

On cross-examination at trial, Corporal Sugg testified he never found a weapon in the trunk and that he only found a gun box. Corporal Sugg further testified that he never linked any of the contents of the trunk to Defendant.

*Facts Pertinent to Point III*

During the cross-examination of Corporal Sugg, the parties discovered some confusion when defense counsel requested to see the police report from which Corporal Sugg had been "testifying . . . or using to refresh [his] memory." Defense counsel stated the police report provided to him through discovery contained 10 pages. Corporal Sugg stated the printout he was using contained 19 pages. Defense counsel marked as Exhibit E the entire file Corporal Sugg brought with him in response to the subpoena served upon him by Defendant ordering him to appear at trial and bring documents – and from which he had been referring to while testifying. Defendant offered Exhibit E into evidence. After the State voir dired Corporal Sugg regarding the longer report consisting of 19 pages that contained information on the passengers, Gregory Haggard and Macey Shelton, the trial court admitted Exhibit E. Defense counsel continued to ask Corporal Sugg questions using Exhibit E.

The State asked to see the exhibits during redirect examination of Corporal Sugg. After some discussion between the State, defense counsel, Corporal Sugg, and the trial court over the confusion caused by what appeared to be two separate Exhibit E's – one being the 19-page report and one being the 10-page report – the State asked defense counsel which Exhibit E he would like to have in evidence, to which defense counsel replied, "Don't play games, Tony, the one he testified from . . . . The one he testified to that's more than 10 pages." The court marked the 10-page report as Exhibit E-1 and the

6

19-page report as Exhibit E-2.  Exhibit E-2 was admitted into evidence.  The State

resumed questioning Corporal Sugg and the following colloquy took place while

referring to Exhibit E-2:

[State]:  What does it say here at the bottom, the first page of E-2?
[Corporal Sugg]:  Right here?
[State]:  Right here.
[Corporal Sugg]:  Warrant.
[State]:  Warrant.  For what?
[Corporal Sugg]:  Felony.
[State]:  Out of what county?
[Corporal Sugg]:  Miller
[State]:  For [Defendant]?
[Corporal Sugg]:  Yes, sir.
[State]:  So he had a felony warrant out [of] Miller County for $85,000 at
     the time you arrested him?
[Corporal Sugg]:  I don't believe so.
The court:  Counsel, could you approach?
     (Counsel approached the bench and the following proceedings were
     held:)
The court:  I only want to try this case once.
[Defense counsel]:  I want to move for a mistrial.
The court:  I realize that Exhibit E-2 has been admitted, but I'm not going
     to allow you to go through there and point out matters in this case
     that would otherwise be inadmissible unless you first approach the
     bench so we can talk about it.
[State]:  Yes, sir.  With all due respect, he opened the door.
The court:  Well, I'm saying he did not open the door.
[State]:  It's right there in the exhibit he admitted.
The court:  I understand that.  And that's why I brought you up to the bench.
     So if there's something in the report that you would like to
     mention—
     The jury hasn't seen this exhibit.
[State]:  That's correct.
The court:  So at any rate I don't think the door has been opened to
     everything that's in that report.  I don't know what's in the report
     but there might be other information about his background that
     wouldn't come into evidence.
[State]:  Then he shouldn't have admitted it.
The court:  I'm giving my ruling.
[Defense counsel]:  I would move for a mistrial, your Honor.
The court:  All right, that's denied  Any other relief you seek?
[Defense counsel]: No
     (The proceedings resumed in open court.)

7

[State]: I'll withdraw the question, your Honor.
The court: All right, go ahead.

During jury deliberations the jury requested the body cam video and Exhibits E-1 and E-2. The jury was allowed to see the same parts of the original body cam video played in trial, Exhibit E-1 in its entirety, and a redacted version of E-2 following Defendant's objections to certain portions of the exhibit, specifically the three booking pages for Defendant, Macey Shelton, and Gregory Haggard, and an entire page having to do with medical care and bonds set with respect to Defendant. The court noted that all of Defendant's redaction requests had been made. Defense counsel stated that the redacted version was acceptable. The State objected to the redacted version of Exhibit E-2.

The jury returned guilty verdicts on all three counts. Defendant filed a motion for new trial which included a claim that the trial court erred in not sustaining his request for a mistrial. On September 10, 2021, the court denied Defendant's motion for new trial and sentenced Defendant to 15 years on Count I, a consecutive term of five years on Count II, and a concurrent term of five years on Count III. Defendant appealed.

**Analysis**

*Point I - Evidence was Sufficient to Permit a Reasonable Juror to Find Beyond a Reasonable Doubt that Defendant Knowingly Possessed the Controlled Substances Discovered in the Glove Compartment.*

Defendant's first point claims the trial court erred in overruling his motions for judgment of acquittal on Counts I through III because the evidence was insufficient to prove beyond a reasonable doubt that "a rational trier of fact could have reached a 'subjective state of near certitude' that [Defendant] knowingly possessed the controlled substances in the glove compartment." We disagree.

8

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal quotations omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

*State v. Hollowell*, 643 S.W.3d 329, 341 (Mo. banc 2022). This Court does not weigh the evidence, but accepts as true all evidence tending to prove guilt with reasonable inferences that support the verdict in determining whether evidence was sufficient to support a conviction and to withstand a motion for judgment of acquittal. *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. banc 2017). This Court does not act as a "super juror" with veto powers but gives deference to the trier of fact when reviewing the sufficiency of evidence supporting a criminal conviction. *Id.* at 859.

### Applicable Legal Principles

A person commits the offense of trafficking drugs in the second degree if, . . . such person knowingly possesses . . . :

. . . .

(10) More than ten milligrams of fentanyl . . . .

Section 579.068.1(10).

"A person commits the offense of possession of a controlled substance if he or she knowingly possess a controlled substance . . . ." Section 579.015.1.

As used in chapters 195 and 579, "[p]ossessed" or "possessing a controlled substance" is statutorily defined:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach

and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

Section 195.010(38); *see also* section 556.061(38) (similar definition of "[p]ossess" or "possessed" for the entire criminal code).

To sustain a conviction for possession of a controlled substance, the State must prove conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the controlled substance. ***State v. Welch***, 603 S.W.3d 745, 748 (Mo. App. S.D. 2020). "'[B]oth possession and knowledge may be proved by circumstantial evidence.'" ***Id.*** (quoting ***State v. Drabek***, 551 S.W.3d 550, 556 (Mo. App. E.D. 2018)). These same rules apply to drug trafficking by knowingly possessing a controlled substance under section 579.068. *See* ***State v. Zetina-Torres***, 482 S.W.3d 801, 806-07 (Mo. banc 2016) (applying these rules to drug trafficking under section 195.223, which is section 579.068's statutory predecessor).

At the time Corporal Sugg searched the car, Defendant did not have the controlled substances on his person or within easy reach or convenient control. Therefore, he was not in "actual possession" of the controlled substances. "[T]he State was required to present enough evidence such that a reasonable juror could conclude that although not in actual possession, [Defendant] had the power and the intention at a given time to exercise dominion or control over the substance[s] either directly or through another person or persons." ***State v. Berwaldt***, 652 S.W.3d 793, 797 (Mo. App. W.D. 2022) (citing section 195.010(38)). Where there is no actual possession, constructive possession may be proven when other facts buttress an inference of the knowledge of the controlled

substance. *State v. Kerns*, 389 S.W.3d 244, 247 (Mo. App. S.D. 2012). Proof of constructive possession requires that Defendant had access to and control over the premises where the substance was found, at a minimum. *Id.* In analyzing constructive possession of a controlled substance, there is "no precise formula, and we look to the facts of each case in determining if the totality of the circumstances supports the finding of possession." *Id.* at 248. "Defendant's *exclusive* control of the premises is enough to raise an inference of possession and control of the substance. *Joint* control of the premises, however, requires some further evidence or admission connecting the accused with the illegal drugs." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992) (emphasis in original).

Although Defendant shared control of and access to the car with the car's owner and the passengers, the State made a submissible case at trial that Defendant had constructive possession of the controlled substances in the glove compartment and that Defendant had knowledge of such possession. Defendant had superior access to the illegal drugs found in the locked glove compartment to that of the passengers. Corporal Sugg testified that the key to the locked glove compartment was on the same keychain as the car key located inside the ignition switch in the car that Defendant was driving and the illegal drugs in the container found in the locked glove compartment were within Defendant's easy reach. Defendant was in control of that keychain as the driver, could turn off the ignition, remove the key from the ignition switch, and unlock the glove compartment with the other key. *See State v. Harp*, 680 S.W.2d 297, 299-300 (Mo. App. E.D. 1984) (where the evidence showed the defendant had turned off the engine of a vehicle after being pulled over, which would give him access to the key and then the

11

glove compartment, therefore, the contents of the glove compartment were readily accessible to the defendant within seconds of being pulled over). The incriminating fact that Defendant had superior access to the glove compartment where the illegal drugs were found is not destroyed by the fact that others in the car also had access to the glove compartment. *State v. Millsap*, 244 S.W.3d 786, 789 (Mo. App. S.D. 2008).

Corporal Sugg also testified he discovered a black, locked cylindrical container inside the glove compartment. Corporal Sugg testified that after he transported Defendant to the Maries County Sheriff's Department, he removed Defendant's handcuffs and observed Defendant holding a key ring with two keys on it. While processing the evidence, Corporal Sugg used one of the keys to open the cylindrical container that had been locked in the glove compartment. An additional incriminating circumstance which has been held to support an inference of knowledge and control in a case of joint possession of the premises is the commingling of the controlled substance with a defendant's personal belongings. *State v. Smith*, 33 S.W.3d 648, 653 (Mo. App. W.D. 2000) (citing *State v. Steward*, 844 S.W.2d 31, 33 (Mo. App. W.D. 1992)). No other evidence was presented at trial that linked any item in the locked glove compartment to either of the passengers. Where, as here, the defendant had superior access to the controlled substances and there was additional evidence that the defendant had exercised some control over the controlled substances, Missouri courts have found sufficient evidence to support a conviction for possession of illegal drugs. *State v. Glaze*, 611 S.W.3d 789, 796-97 (Mo. App. W.D. 2020) (citing *State v. Buford*, 309 S.W.3d 350, 359-60 (Mo. App. S.D. 2010)). That additional evidence has included a defendant's personal belongings being found alongside the contraband. *Id.* In this case, like in

*Glaze*, the totality of the circumstances supports the reasonable inference that Defendant had knowledge of and exercised control over the dictionary-style container holding the illegal drugs, given that it was located in a locked glove compartment to which Defendant had superior access and that also contained a locked cylindrical container for which Defendant had a key on his person.[8]

Defendant argues this case is similar to *State v. Bowyer,* where the Western District of this Court reversed a conviction for possession of a controlled substance based on insufficient evidence. *State v. Bowyer*, 693 S.W.2d 845, 849-50 (Mo. App. W.D. 1985). That case is easily distinguishable from this case. In that case, the defendant was driving a car owned by his estranged wife, who was in the passenger seat when the car was stopped by police. *Id.* at 846. The trooper who conducted the stop saw a roach clip used to smoke marijuana dangling from the rearview mirror, a marijuana cigarette in the center console, and another roach clip in the glove compartment. *Id.* The wife told the trooper and explained at trial she had placed the items in the car and that the defendant never had possession of them. *Id.* at 846-47. The defendant was charged with possession of marijuana. *Id.* at 849. The court held that the evidence showed the defendant had not been in the car for about six months and the clear inference was that only the wife had a key to the vehicle, that the wife was the owner of the car and was also present in it throughout the day and at the time of the defendant's arrest. *Id.* She also testified she placed the drugs in the car. *Id.* The court found the circumstances showed conscious

---

[8] Defendant incorrectly argues in his Appellant's Brief that "none of his personal belongings were found in the box or the glove compartment" as the totality of the circumstances gives rise to a reasonable inference that the cylindrical container belonged to Defendant.

13

possession by the wife, not by the defendant. *Id.* Here, the evidence showed that the passengers did not have access to the locked glove compartment to which only Defendant possessed the key. Additionally, none of the passengers had possessions in the glove compartment, unlike Defendant who could reasonably be inferred to have possessed the locked cylindrical container found in the glove compartment. Unlike the facts in ***Bowyer***, here, a reasonable juror could find that Defendant had constructive possession of the controlled substances.

There was sufficient evidence from which a reasonable juror could determine beyond a reasonable doubt Defendant solely and knowingly possessed the controlled substances located in the glove compartment giving rise to his charges. As such, the trial court did not err in overruling Defendant's motions for judgment of acquittal.

Defendant's first point is denied.

*Point II – The Trial Court Did Not Abuse its Discretion in Overruling Defendant's Objection to an Unredacted Version of State's Exhibit 1, the Body Cam Video.*

In his second point, Defendant claims the trial court abused its discretion in overruling Defendant's objection to an unredacted version of State's Exhibit 1, the body cam video, because the evidence of the gun found in the trunk of the car Defendant was driving "was irrelevant and implied that [Defendant] was a violent person who had committed uncharged crimes, which was inadmissible character and propensity evidence." We disagree.

**Standard of Review**

A trial court's decision to admit evidence is reviewed for abuse of discretion. ***State v. Williams***, 548 S.W.3d 275, 287 (Mo. banc 2018). "The circuit court's evidentiary ruling 'will not be disturbed unless it is clearly against the logic of the

14

circumstances.'" *Id.* (quoting *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017)).  The burden of overcoming the presumption that a discretionary ruling is correct is on Defendant.  *State v. Gott*, 523 S.W.3d 572, 578 (Mo. App. S.D. 2017).  "'We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'"  *State v. Burge*, 596 S.W.3d 657, 661 (Mo. App. S.D. 2020) (quoting *State v. Bumbery*, 492 S.W.3d 656, 665 (Mo. App. S.D. 2016)).

**Discussion**

Prior to addressing the merits of Defendant's claimed error in Point II, we must address whether Defendant preserved the claim for appeal.  In order to preserve an evidentiary error in a jury-tried case, an appellant must:  "(1) timely object to the evidence at the time of trial; (2) restate the objection on the same basis in the motion for new trial pursuant to Rule 29.11(d);[9] and (3) make the claim in his or her appellant's brief."  *State v. Crider*, 611 S.W.3d 904, 907 (Mo. App. S.D. 2020).  Objecting to the admission of evidence in a pretrial motion "is not sufficient to preserve for appeal any error in failing to exclude it."  *State v. Hughes*, 563 S.W.3d 119, 124 (Mo. banc 2018).  "To preserve a pretrial objection, a party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection.  Only an objection made timely *at trial* will preserve an issue for appeal."  *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022) (internal citations and quotations omitted) (emphasis in original).  "The objection at trial must be specific, and on appeal, the same grounds must be relied upon."  *State v. Tisius*, 362 S.W.3d 398, 405

---

[9] All rule references are to Missouri Court Rules (2022).

15

(Mo. banc 2012).  Further, a "claim of constitutional error must be raised at the first opportunity and with citation to specific constitutional objections."  *Minor*, 648 S.W.3d at 729.  "The objection at trial must be specific and made contemporaneously with the purported error."  *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015).

Our Supreme Court recently reiterated in *Peterson v. State*:

> A party is required to object *at trial* to allow the circuit court the opportunity to reconsider its prior ruling against the backdrop of the evidence actually adduced at trial. This allows a party to control whether to maintain the objection because the party may determine the objection is meritless based upon the evidence actually adduced or the party strategically may decide not to object.
> An appellate court is a court of review, determining whether the circuit court's rulings were correct. Accordingly, a party seeking the correction of error must stand or fall on the record made in the [circuit] court. An objection presented to the circuit court may not be broadened on appeal.

658 S.W.3d 512, 516 (Mo. banc 2022) (internal citations and quotations omitted) (emphasis in original).

Defendant's second point relied on states:

> The trial court abused its discretion in overruling defense counsel's objection to an unredacted version [of] State's Exhibit 1, the body cam video, because this evidence violated [Defendant]'s rights to due process, a fair trial, and to be tried only for the offense charged, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution, in that evidence of a gun box found in the trunk of the car he was driving was irrelevant and implied that he was a violent person who had committed uncharged crimes, which was inadmissible character and propensity evidence.

When the State moved to admit Exhibit 1 into evidence during the trial, Defendant objected.  After requesting to approach the bench, the following colloquy occurred:

[Defense counsel]:  I renew my motion to suppress.

> [State]:  Sorry, what?
> [Defense counsel]:  I move to suppress it, Judge, based on our motion that
>     we filed.
> The court:  Your objection is overruled.
> [Defense counsel]:  Thank you.

Defendant made no specific objection, constitutional or otherwise, to the portion of the body cam video being shown where Corporal Sugg allegedly discovers a gun or gun box in the trunk of the car driven by Defendant.  Instead, Defendant renewed his motion to suppress that the trial court previously denied after hearing.  Specifically, Defendant's motion to suppress:

> move[d] for an order suppressing from the use in evidence the vehicle stop, any evidence seized, and any admissions made by Defendant, items taken from the person, automobile, property, premises of the [D]efendant or in which the [D]efendant was present or in which the [D]efendant had a superior right or interest, or which the plaintiff alleges [D]efendant to have had possession, and suppression of all evidence of said search and seizure and the fruits thereof, and any statements made by the Defendant during said illegal search and seizure . . .[.]

The trial court held a hearing on Defendant's motion to suppress.  There was no mention of the body cam video at the hearing at all, or any mention of a gun or gun box located in the trunk of the vehicle.

Defendant also failed to raise this specific claim of error in his motion for new trial.  Defendant's motion for new trial[10] stated in pertinent part:

> The [c]ourt erred, as a matter of law, in failing to sustain defense's objections to the publishing of a portion of the body cam video footage, which included the Defendant and his passengers being detained, handcuffed, and placed in police vehicles. Said video footage was high[ly] prejudicial and outweighed its probative value.

---

[10] Defendant also filed a First Amended Motion for New Trial.  The relevant language in the amended motion was identical.

17

Furthermore, none of Defendant's motions or objections raised claims that the body cam video constituted improper character or propensity evidence.

Defendant never presented this argument to the trial court in the motion to suppress or through any objections made to the trial court. "'We will not convict a trial court of error for reasons not presented to it and instead argued for the first time on appeal.'" ***State v. Taylor***, 636 S.W.3d 630, 637 (Mo. App. S.D. 2021) (quoting ***State v. West***, 548 S.W.3d 406, 413 (Mo. App. W.D. 2018)). Allegations of error in a motion for new trial may not be changed or broadened on appeal, the claim contained in the motion for new trial must be the same as the claim on appeal. ***Crider***, 611 S.W.3d at 907-08. Because Defendant failed to raise his claimed error not only at trial, but at any time to the trial court before filing his appeal, Defendant has failed to preserve his claim for review on appeal.

Unpreserved claims of error can only be reviewed for plain error under Rule 30.20. ***State v. Brandolese***, 601 S.W.3d 519, 525-26 (Mo. banc 2020). Generally, we do not review unpreserved claims of error, ***id.***, and Appellant did not ask for plain error review here. Plain error review is discretionary. ***Id.*** "[U]nless a claim of plain error facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this Court will decline . . . to review for plain error under Rule 30.20." ***State v. Brown***, 902 S.W.2d 278, 284 (Mo. banc 1995). A defendant bears the burden of proving manifest injustice occurred. ***Brandolese***, 601 S.W.3d at 526. Defendant fails to meet his burden here because he does not request plain error review or present an argument supporting the claimed error.

Defendant's second point is denied.

*Point III - The Trial Court Did Not Abuse its Discretion in Overruling Defendant's Request for a Mistrial.*

In Defendant's third point, Defendant claims:

The trial court abused its discretion in overruling defense counsel's request for a mistrial when the prosecutor asked Officer Sugg if [Defendant] had a warrant for his arrest out of Miller County, because the prejudicial effect of this evidence outweighed any probative value and its admission violated [Defendant's] rights to due process of law and to be tried only for the offense charged, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution, in that the prosecutor's questions had no purpose other than showing [Defendant] was a bad person who was more likely to have committed the charged offenses. Only a mistrial could have cured the error.

We disagree.

**Standard of Review**

We review the refusal to grant a mistrial for abuse of discretion, reversing only if that ruling was so clearly illogical, arbitrary, unreasonable, and ill-considered as to shock the sense of justice. *See State v. Norris*, 237 S.W.3d 640, 644 (Mo.App. [S.D.] 2007). Mistrial is a drastic remedy used only in the most extraordinary circumstances when grievous error cannot otherwise be remedied. *Id.*

*State v. Miller*, 531 S.W.3d 91, 93 (Mo. App. S.D. 2017). Because the trial court is in a superior position to determine the effect of improper remarks, and what, if anything, must be done to cure the problem, review of a refusal to declare mistrial is on an abuse of discretion standard. *State v. Norris*, 237 S.W.3d 640, 644 (Mo. App. S.D. 2007). A trial court abuses its discretion when its ruling is "clearly against the logic of the circumstances, and it is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* We review for prejudice, not mere error, and will reverse only if the error deprived the defendant of a fair trial because the error was so prejudicial. *Id.* Unless there is a reasonable probability that the error affected the outcome of the trial, the trial court error is not prejudicial. *Id.* The burden to

demonstrate a reasonable probability that the error affected the outcome of the trial is on the defendant. ***State v. Turner***, 367 S.W.3d 183, 188 (Mo. App. S.D. 2012).

**Analysis**

Generally, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. ***Norris***, 237 S.W.3d at 644. "Vague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." ***Id.*** A defendant's association with other crimes "must be clear and definite to run afoul of the general rule of inadmissibility." ***State v. Sheridan***, 486 S.W.3d 358, 362 (Mo. App. S.D. 2015) (internal quotations and citation omitted). The evidence must show the accused committed, was accused of, was convicted of, or was definitely associated with other crimes or misconduct. ***Id.*** The mere existence of warrants does not prove the defendant guilty of any prior offense. ***State v. Bringleson***, 905 S.W.2d 882, 889 (Mo. App. S.D. 1995). Not mentioning the alleged offenses underlying the warrants minimizes any potential prejudice. ***Id.*** (where police officer testified the defendant had warrants from Canada, but the testimony yielded no clue about the crime or crimes for which the warrants were issued, this Court held the trial court did not abuse its discretion in denying defendant's request for a mistrial)*; see also* ***State v. Sanders***, 761 S.W.2d 191, 192 (Mo. App. E.D. 1988) (where law enforcement testified there were warrants for defendant's arrest on file with no mention of the specific details of the warrant or the nature or the charges for which the warrant was issued, court held testimony was too vague to warrant a mistrial because the failure to mention the type of prior offenses underlying the warrants minimized the potential prejudice).

20

Here, the reference to the Miller County warrant was brief, vague, and isolated. Corporal Sugg's testimony never mentioned the reason for the warrant or a crime for which the warrant had been issued other than it was a felony. The testimony certainly did not prove Defendant had committed another crime. While the State did ask Corporal Sugg if a felony warrant for $85,000 out of Miller County existed at the time of Defendant's arrest, any potential prejudice was diminished when Corporal Sugg answered, "I don't believe so."

Moreover, even if the trial court erred in denying Defendant's request for a mistrial, which we do not find here, Defendant failed to demonstrate prejudice from the denial. The trial judge, who was in the best position to discern any prejudice, immediately called the parties to the bench and ruled that Defendant had not opened the door to Corporal Sugg's testimony that Defendant had an outstanding felony warrant out of Miller County, stopping the State from asking another question that might result in a similar answer. The State subsequently withdrew its question.

Defendant sought no other relief besides a mistrial when given the opportunity to do so by the trial court. Specifically, the trial court asked if Defendant sought any other relief to which defense counsel replied "[n]o." Such a failure to present the trial court with a choice of some form of corrective relief short of a mistrial dulls any inclination on the part of appellate courts to find the trial court abused its discretion in failing to grant a mistrial. *State v. Smith*, 934 S.W.2d 318, 321 (Mo. App. W.D. 1996). "'[W]here, as here, [D]efendant does not ask for an instruction, then we will consider the failure to grant a mistrial an abuse of discretion only if we find that the reference was so prejudicial that its effect could not have been removed by direction to the jury.'" *State v. Rice*, 514

S.W.3d 125, 127-28 (Mo. App. S.D. 2017) (quoting *Smith*, 934 S.W.2d at 321).

Furthermore, when the jury requested a copy of Exhibit E-2, the court properly submitted to the jury a redacted version of Exhibit E-2, omitting the outstanding warrant information (and other inadmissible evidence) that was requested and approved by Defendant.

The evidence was overwhelming that Defendant was driving a car where Corporal Sugg located large quantities of illegal controlled substances in a locked glove compartment to which Defendant had superior control in that he had the key to the glove compartment in his possession. Also, there was testimony that a locked cylindrical container for which Defendant had a key on his person was located in the locked glove compartment with the illegal controlled substances while none of the other passengers of the car could be linked to the contents of the glove compartment.

Finally, there is not a reasonable probability that the vague mention of a warrant would affect the outcome of the trial considering the overwhelming evidence against Defendant. *Norris*, 237 S.W.3d at 644.

Point III is denied.

The trial court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS